[No. 15976-3-I.   Division One.   December 22, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS ROOSEVELT THOMAS, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Katherine M. Flack, Deputy,* for respondent.

WEBSTER, J.—Douglas Roosevelt Thomas appeals from his conviction of statutory rape in the third degree, RCW 9A.44.090. He raises two issues: (1) whether the trial court erred in admitting statements made by the victim under the excited utterance exception to the hearsay rule, ER 803(a)(2), and (2) whether the trial court erred in refusing to give an instruction on the role of character evidence in determining guilt or innocence. We find no error and there-

fore affirm.

## FACTS

Fourteen–year–old S.C.[1] was a frequent visitor in the home of Douglas and Scetra Thomas. On March 2, 1984, she spent the night there with the Thomases' daughter. She arrived at about 9 p.m., and saw Douglas Thomas as he was going out for the evening.

S.C. went to bed at about 10 p.m. She was awakened at about 4:30 the next morning by the sound of Mrs. Thomas speaking to her husband, Douglas. She testified that a short time later she saw Douglas standing in front of her bedroom door. She asked him, "Is that you Doug?" He replied, "Yes." He then entered her room. Addressing S.C. by name, he asked her, "Would you tell?" S.C. said nothing and Douglas left. She then fell back asleep.

According to S.C.'s testimony, she was again awakened upon hearing an intruder, whom she later identified as Douglas, enter her room and bump against the bed. Neither Douglas nor S.C. spoke. Douglas got into the bed and had intercourse with S.C. S.C., scared and in shock, did not yell for help. When he was done, Douglas lay on the bed, cried for a few minutes, and then left. S.C. cried herself to sleep.

On awakening at 11 the next morning, S.C. saw neither Douglas nor Scetra in the Thomas house. She did, however, see a friend of the Thomases, Timothy Isac, on their couch. Isac had been out with Douglas the evening before, and had spent the night. From the Thomases', S.C. walked five blocks to a friend's house. From there she telephoned her mother. The time was then about 11:30 a.m.

S.C.'s mother related the substance of the telephone call at trial. She testified that S.C. was very upset. She had begun to cry and had told her mother "I have just been raped." When asked who had raped her, S.C. answered, "Doug." Defense counsel objected to S.C.'s mother's testi-

---

[1]For purposes of this opinion, the victim will be referred to by her initials—S.C.

mony, contending a foundation had not been laid to allow the testimony into evidence under the excited utterance exception to the hearsay rule. The trial judge overruled the objection.

S.C.'s mother picked her up shortly after the telephone call. S.C. gave a report to police. Later that evening she went to a hospital for a physical examination. The examination revealed that, within 24 hours of the examination, S.C. had sustained a hymenal tear and superficial lacerations in the perineal area.

One of the major issues at trial was identification. During the assault, S.C. was unable to see her assailant's face. She kept her arms to her side, and did not touch him with her hands. S.C. identified Doug as her assailant because Doug was black, had large legs and a big chest, just like her assailant.

Both Douglas Thomas and Timothy Isac testified at trial. Each denied entering S.C.'s bedroom during the early morning hours in question.

In his defense, Thomas called three character witnesses. Each testified that Douglas Thomas's reputation for sexual morality and decency was good. Defense counsel requested the following instruction with regard to character:

> Evidence of the defendant's good character may be sufficient to raise a reasonable doubt whether the defendant is guilty, where doubt would otherwise not exist.

The court declined to give the proffered instruction, and gave no specific instructions about character evidence. The jury found Thomas guilty. This appeal timely followed.

### EXCITED UTTERANCE

■ The trial court determined that S.C.'s statements to her mother were admissible as excited utterances. A hearsay statement is admissible as an excited utterance if it was "made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). *State v. John Doe,* 105 Wn.2d 889, 719 P.2d 554 (1986). In

determining whether a statement constitutes an excited utterance, the key question is "'whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'" *Doe,* at 893 (quoting *Johnston v. Ohls,* 76 Wn.2d 398, 406, 457 P.2d 194 (1969)). Whether a statement falls within the rule is left to the trial court's discretion, and its determination will not be disturbed in the absence of abuse of that discretion. *Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975).

Appellant argues that S.C.'s statements were unreliable because she had time to reflect and fabricate between the time of the complained–of event and the call to her mother. The record reflects a 6– to 7–hour time span. However, while the passage of time should be considered, it is not dispositive. *State v. Flett,* 40 Wn. App. 277, 699 P.2d 774 (1985). The courts have accordingly allowed statements made several hours after startling events where there were no intervening influences that might have rendered them unreliable. *See State v. Flett, supra* (the trial court did not abuse its discretion in admitting statements made 7 hours after rape); *State v. Woodward,* 32 Wn. App. 204, 646 P.2d 135 (trial court did not abuse its discretion in admitting a victim's statements made approximately 20 hours after rape where her young age, physical condition, and threats of violence made the possibility of fabrication remote), *review denied,* 97 Wn.2d 1034 (1982). *Cf. Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 668 P.2d 571 (1983) (statements made 30 to 40 minutes after event were not within the rule where the record showed the declarant had an opportunity to calm down and reflect); *State v. Slider,* 38 Wn. App. 689, 692–93, 688 P.2d 538 (1984) ("[T]he aggregate effect of the passage of time and the leading nature of the mother's questions attenuated the degree of reliability of [the victim's] statements".), *review denied,* 103 Wn.2d 1013 (1985).

The record here supports the trial court's determination

that S.C. was still upset when she called her mother. While several hours elapsed prior to the call, several of them were spent sleeping in the home of the alleged perpetrator. S.C. was upset and crying on the telephone, and none of her responses were the product of leading questions. The trial court did not abuse its discretion in allowing S.C.'s mother to testify as she did.

## CHARACTER EVIDENCE

Thomas next argues that the trial court's refusal to give the proffered character instruction requires the reversal of his conviction.

Evidence of the defendant's good character weakens the credibility of other evidence used against him at trial. *See State v. Allen,* 89 Wn.2d 651, 574 P.2d 1182 (1978). Thus, character evidence, in and of itself, may create doubt as to the guilt of the accused. *State v. Allen, supra.* If, however, the jury finds the defendant guilty beyond a reasonable doubt, it should convict in spite of his otherwise good character. *See* 1 C. Torcia, *Wharton on Criminal Evidence* § 239 (13th ed. 1972).

When a defendant produces evidence with respect to his good character, he is entitled to an instruction describing the relevance of such evidence. *State v. Allen, supra. See State v. Humphreys,* 118 Wash. 472, 203 P. 965 (1922); *State v. Cushing,* 17 Wash. 544, 50 P. 512 (1897). The purpose behind such an instruction is to explain to the jury the relation of good character to the particular issues involved. Thereby, the jury will be less likely to discount or ignore character evidence. *State v. Cushing, supra.*

In *State v. Allen, supra,* the Washington Supreme Court held that it was not error for the trial court to grant a new trial for having failed to give an instruction on the relevance of character evidence. The defendant therein had requested the following instruction:

> Evidence has been presented in this case which bears upon the good character and good reputation of the defendant. Such evidence is pertinent and proper

in a criminal proceeding, and may in and of itself create a doubt as to the guilt of the defendant. Certainly such evidence should be considered by you, along with all the other evidence, in determining the guilt or innocence of the defendant.

*Allen,* at 653. The trial court had refused the instruction, and instructed the jury to consider evidence "'concerning the charge' . . . or 'with respect to any count of the information'". *Allen,* at 655. The reviewing court held that, unless otherwise advised, the instructions given may have led the jury to conclude that it could consider only evidence relating to the particular transaction. *Allen,* at 655.

■ However, the holding in *Allen* is limited. The *Allen* court explicitly stated that it was not deciding "whether it would have been reversible error to refuse to give any instruction at all upon this matter." *Allen,* at 659. As the court in *State v. Mark,* 94 Wn.2d 520, 618 P.2d 73 (1980) explained at pages 525–26,

> *State v. Allen, supra,* stands for the proposition that it is not reversible error to instruct the jury that character evidence may in and of itself create a doubt as to the guilt of the defendant; but it does not go so far as to say that the refusal of such an instruction is reversible error, where the jury is otherwise instructed that it should consider the evidence as bearing on the guilt or innocence of the defendant. And *we indicated that the proposed instruction was vulnerable, at least to some extent, to an objection that it might mislead the jury.*

(Italics ours.)

The court in *Mark* went on to hold that, where the jury was otherwise informed as to the relevance of character evidence, it was not error to refuse an instruction that character evidence alone might create a doubt as to the defendant's guilt.

In the case sub judice, the instructions went well beyond those given in *Allen.* Here, the jury was instructed:

> The evidence you are to consider consists of the testimony of the witnesses and the exhibits admitted into evidence. . . .
> In determining whether any proposition has been

proved, you should consider all of the evidence introduced by all parties bearing on the question.

The jury was thus explicitly told to study *all evidence*, including character testimony. Further, the jury was instructed:

A reasonable doubt is such a doubt as would exist in the mind of a reasonable person *after fully, fairly and carefully considering all of the evidence* or lack of evidence.

(Italics ours.)

While an instruction focusing on the relevance of character evidence may be preferable, the instructions given here are adequate.[2] They (1) permit Thomas to argue his theory of the case, (2) are not misleading, and (3) when read as a whole, properly inform the jury of the applicable law. *See State v. Theroff*, 95 Wn.2d 385, 389–90, 622 P.2d 1240 (1980). The only instruction requested by Thomas was very similar to the instruction that the *Mark* court claimed was close to misleading. Consequently, the court's refusal of Thomas's instruction is not reversible error.

Affirm.

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied January 29, 1987.

Review granted by Supreme Court March 31, 1987.

---

[2]The Washington Supreme Court Committee on Jury Instructions suggests that the following instruction should be given in every case where evidence of the defendant's character has been admitted on the issue of guilt:

Any evidence which bears upon good character and good reputation of the defendant should be considered by you, along with all other evidence, in determining whether or not the defendant is guilty. Such evidence may, in and of itself, create a reasonable doubt as to the guilt of the defendant. However, even if you find that the defendant is a person of good character or reputation, you should not acquit if you are convinced beyond a reasonable doubt of the defendant's guilt.

WPIC 6.12.