[No. 58233-5.    En Banc.    July 9, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. GORDON MICHAEL STRAUSS, *Appellant.*

402

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Donna L. Wise, Senior Appellate Attorney,* and *Rebecca J. Roe, Senior Deputy,* for respondent.

JOHNSON, J. — Gordon Michael Strauss was convicted of second degree rape. The trial court imposed an exceptional sentence based, in part, on its finding that Strauss was a future danger to society. The trial court made this finding without a mental health care professional's evaluation of the defendant's amenability to treatment. We remand the case to the trial court to determine the defendant's amenability to treatment pursuant to *State v. Pryor,* 115 Wn.2d 445, 799 P.2d 244 (1990).

On October 12, 1986, P.G. was jogging on a trail surrounding a Safeco Insurance complex in Redmond, Washington. A stranger, later determined to be Strauss, approached her

from his car and grabbed her arm and neck. He told her: "If you cooperate, I won't hurt you." When P.G. resisted, Strauss threatened to drag her to his car. He told her that she had better do what he said because her life depended on it. Strauss forced P.G. to the ground and raped her both orally and vaginally.

A jury found Strauss guilty of raping P.G. Strauss' standard range for the offense was 31 to 41 months. On July 23, 1987, the trial court imposed an exceptional sentence of 120 months. The court based this sentence on its findings that: (1) the defendant's conduct during the crime manifested deliberate cruelty; (2) the crime involved a high degree of sophistication and planning; (3) the defendant abused a position of trust due to the security guard-like clothing he wore at the time of the rape; (4) the defendant appeared intensely menacing toward P.G. while she was testifying at trial; and (5) the defendant is a future danger to society.

The trial court based its future dangerousness finding on Strauss' conduct on four prior occasions. The court did not hold an evidentiary hearing on these four prior acts even though Strauss either denied that the acts occurred, or disputed the court's ability to consider the acts for the purposes of a future dangerousness finding.

The defendant appealed his sentence to the Court of Appeals. The Court of Appeals held that the evidence was insufficient to support the trial court's findings of deliberate cruelty, sophistication and planning and an abuse of a trust position. *State v. Strauss*, 54 Wn. App. 408, 418-21, 773 P.2d 898 (1989). The court also determined that the sentencing judge's observation that the defendant appeared intensely menacing at trial was not objective in nature, and therefore could not be used to support an exceptional sentence. *Strauss*, at 422. Finally, the Court of Appeals remanded the case to the trial court for an evidentiary hearing on Strauss' prior criminal history for the purposes of a future dangerousness finding. *Strauss*, at 421-23.

In July and October 1989, the trial court held the evidentiary hearing on remand regarding the defendant's prior

criminal history. The trial court ruled that the Rules of Evidence did not strictly apply at this sentencing proceeding. The following facts were developed at this hearing.

In 1978, Strauss pleaded guilty in California to the charge of having sexual intercourse with a 17-year-old female. No additional information on this conviction was presented at the 1989 hearing on remand.

In 1982, the State charged Strauss with the crimes of first degree rapè, first degree kidnapping and second degree assault arising from an incident in Washington state involving D.E. These charges were later dismissed pursuant to a plea bargain. D.E. did not appear at the 1989 hearing on remand. The State subpoenaed her to testify at the remand hearing regarding these allegations against Strauss, but the subpoena was returned as undeliverable. Telephone records indicated that D.E.'s telephone number had been out-of-service for some time and the State could not locate her through the Department of Licensing. The trial court ruled that for the purposes of the hearing on remand, D.E. was unavailable to testify.

Officer Johal testified at the 1989 remand hearing that on the morning of August 8, 1982, he met D.E. at a gas station pursuant to her report that she had been raped. He testified that when he took D.E.'s statement about the allegation, D.E. was very distraught, very red in the face and crying. D.E. also appeared to be in a state of shock. The court found that D.E.'s statement to Officer Johal qualified as an excited utterance and allowed Officer Johal to read into the record D.E.'s statement.

D.E.'s statement reveals the following. On August 7, 1982, D.E. was hitchhiking with a friend. A stranger, later identified as Strauss, picked them up and took them to his apartment. At the apartment, Strauss got a knife and forced D.E. into his bedroom. He told her he was going to kill her and kept poking her with the knife. He raped her orally, during which time he threatened her with a broken beer bottle and with the knife. He raped her vaginally, and also raped her with the knife handle. The attack lasted

through the night and into the morning of August 8. In the morning, he took her in his car to a wooded area where he raped her again. Strauss drove her back to his apartment and left her alone in the car. D.E. then fled, found a gas station and there telephoned the police.

Officer Johal testified that when he took D.E.'s statement around 10 a.m. on the morning of August 8 he noticed bruises and scratch marks on D.E.'s throat and neck, as well as bruises and cuts on her lower back and lower left leg area.

Detective Trent, who was assigned to investigate the case, also testified at the 1989 remand hearing. He testified that his first contact with D.E. occurred while she was with Officer Johal on the morning of August 8. When the detective arrived, he noticed that D.E. had "bruises around her neck" and "puncture wounds on her body."

The detective went to Strauss' apartment. Once inside, he advised Strauss of his *Miranda* rights. Strauss then admitted to the detective that D.E. had been in his apartment that night. The detective searched the apartment and found a pair of D.E.'s shoes and underpants, a pocketknife and a broken beer bottle. He also went to the wooded area in question on the day D.E. reported the rape. At that site, he found evidence that a vehicle had been there. He also found one set of small human track prints and another set of fairly large human track prints.

Less than 1 month after the incident involving D.E., Strauss assaulted N.W. with a knife as she was walking in or near the same wooded area where D.E. reported being raped and where the Safeco Insurance complex would later be built. Like D.E., N.W. did not appear at the 1989 hearing on remand. The State subpoenaed her, and the subpoena was not returned. N.W. could not be contacted through either her work or home telephone numbers. The court found that N.W. was unavailable for the purposes of the hearing.

The record reflects the following information regarding the assault. On September 2, 1982, N.W. was walking home

from work. Strauss approached her and asked her for the time. He then pulled out a knife and told her to get in his car. N.W. began screaming. A driver heard N.W.'s screams and went to her aid. Strauss then released N.W. and took off in his car. The assailant's license plate number was noted, and the police traced the car to Strauss. The State amended the charges pending against Strauss from the incident involving D.E. to add an additional count for the second degree assault of N.W.

At the hearing on remand, Detective Atchley testified that he was present at the lineup when N.W. positively identified Strauss as her assailant. The trial court admitted the lineup form arising out of this identification.

Strauss pleaded guilty in 1982 to second degree assault arising out of the N.W. incident. In exchange, the State agreed to dismiss the rape, kidnapping and assault charges arising out of the incident involving D.E.

At the hearing on remand, the court admitted Strauss' parole documents into evidence. These documents reveal that Strauss began his prison sentence in March 1983 for the second degree assault conviction and was paroled on September 3, 1986. Approximately 5 weeks after he was paroled, Strauss raped P.G. near the Safeco complex.

Another incident occurred near the Safeco complex in Redmond approximately 3 months after Strauss raped P.G. E.J. testified at the remand hearing that on January 10, 1987, she was jogging near the Safeco complex. A car pulled up beside her as she was jogging. A stranger, later determined to be Strauss, leaned out of the car and asked E.J. if she wanted to have sex. E.J. ignored him, recorded the car's license plate number and reported the incident to the police. The authorities traced the car to Strauss. E.J. later identified Strauss from a photo montage.

Vandy George, a community corrections officer, testified at the 1989 remand hearing that he had conducted the presentence investigation on Strauss for the defendant's 1987 rape conviction. The court admitted George's report into evidence. In this report, George recommended that

Strauss be sentenced to an exceptional sentence of 120 months because, in George's opinion, the public would not be adequately protected by a sentence within the standard range.

At the end of the hearing, the trial court found that Strauss had raped D.E. The court also relied on Strauss' assault against N.W., his conduct toward E.J. and on Strauss' 1978 California conviction in determining that the defendant was a future danger to society. The court also found, without the benefit of a mental health care professional's opinion, that Strauss was not amenable to treatment.

The trial court again imposed an exceptional sentence of 120 months. In addition to its future dangerousness finding, the trial court relied on all of the other aggravating factors it cited at the original sentencing hearing in 1987, even though the Court of Appeals had held that Strauss' menacing appearance at trial could not support an exceptional sentence, and that the evidence was insufficient to support the findings of deliberate cruelty, sophistication and planning and abuse of a position of trust.

This court accepted direct review of the case. Strauss contends that the trial court erred in imposing an exceptional sentence at the hearing on remand. He maintains that his sentence should be vacated and remanded for a sentence within the standard range.

Strauss first argues that the evidentiary hearing held on remand violated the Fifth Amendment's prohibition against double jeopardy. The fifth amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ." One of the purposes behind the double jeopardy clause is to protect people from prosecution for the same offense after an acquittal. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072, 2089 (1969). The defendant argues that the Court of Appeals determination "acquitted" him from an exceptional sentence, and that the double jeopardy clause precluded the trial court on remand from again imposing an exceptional sentence.

The double jeopardy clause has had only a limited application in sentencing proceedings. *See United States v. DiFrancesco*, 449 U.S. 117, 133, 66 L. Ed. 2d 328, 101 S. Ct. 426 (1980) ("There are . . . fundamental distinctions between a sentence and an acquittal [on the underlying charge], and to fail to recognize them is to ignore the particular significance of an acquittal."). The United States Supreme Court has held that the double jeopardy clause may apply, however, at sentencing hearings in capital cases where the prosecution seeks the death penalty. *See Bullington v. Missouri*, 451 U.S. 430, 68 L. Ed. 2d 270, 101 S. Ct. 1852 (1981). Strauss argues that the Court's holding in *Bullington* should be extended to noncapital sentencing hearings held pursuant to the Sentencing Reform Act of 1981 (SRA).

In *Bullington*, a jury found the defendant guilty of capital murder, but could not unanimously agree during the penalty phase of the proceeding that the defendant should be put to death. The Court then sentenced the defendant to life in prison, pursuant to a Missouri statute. The defendant subsequently challenged his conviction on grounds not related to this case, and the Court granted him a new trial. At the start of the new trial, the prosecution gave notice that it would again seek the death penalty.

The United States Supreme Court held that the double jeopardy clause barred the prosecution from seeking the death penalty at the second sentencing proceeding because those proceedings had "the hallmarks of the trial on guilt or innocence." *Bullington*, at 439. The Court determined that the following four characteristics of the proceedings in *Bullington* constituted the requisite "hallmarks" for double jeopardy purposes. First, under the Missouri statute, a sentencing proceeding separate from the trial was required if the jury found the defendant guilty of capital murder. Second, the prosecution bore the burden of proving the existence of certain aggravating factors at this proceeding. Third, the prosecution was required to present proof of these factors beyond a reasonable doubt. Finally, the factfinder's discretion at the sentencing proceeding was limited to one

determination: whether or not the defendant's case merited the death penalty. *Bullington*, at 439.

Strauss maintains that the double jeopardy clause should apply at SRA sentencing proceedings because these proceedings, like the death penalty proceedings in *Bullington*, have the requisite "hallmarks of the trial on guilt or innocence." The SRA provides that:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. *Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. . . .*

(Italics ours.) RCW 9.94A.370(2). An SRA sentencing proceeding bears some resemblance to the sentencing proceedings at issue in *Bullington*. Under the SRA, a court must determine whether certain aggravating or mitigating factors are present in order to impose an exceptional sentence above or below a defendant's standard range. *See* RCW 9.94A.390. Also, under the SRA, a court must conduct a separate evidentiary hearing where a defendant disputes material facts that the court may wish to consider for sentencing purposes. *See* RCW 9.94A.370(2).

An SRA evidentiary hearing, however, clearly lacks the other two "hallmarks of the trial on guilt or innocence" that the United States Supreme Court deemed crucial in *Bullington*. The SRA requires the party offering the evidence to bear the burden of proof by a preponderance of the evidence, rather than by proof beyond a reasonable doubt. *See* RCW 9.94A.370(2). Also, a sentencing judge's discretion under the SRA is not restricted in the same manner or to the same extent as the factfinder's discretion in *Bullington*. In *Bullington*, the jury was required to make one determination: whether or not the defendant's case merited the

death penalty. A sentencing judge's discretion under the SRA is structured, but not eliminated. *See* RCW 9.94A.010. Under the SRA, the court must consider whether the defendant's case merits a sentence at the low or high end of the defendant's standard range, or at any point in between. *See* RCW 9.94A.120. If the court properly finds that the defendant's case merits an exceptional sentence, the court may impose an appropriate sentence either above or below the standard range. *See* RCW 9.94A.120(2).

One year prior to issuing its opinion in *Bullington*, the United States Supreme Court held that the double jeopardy clause did not apply at a noncapital sentencing proceeding which lacked the same two "hallmarks of the trial on guilt or innocence" that are lacking in this case. *See United States v. DiFrancesco, supra.* In *DiFrancesco*, the defendant was convicted of two federal offenses. The prosecution sought to enhance the defendant's sentence for these convictions under the federal "dangerous special offender" statute. This statute provided for a separate sentencing proceeding at which the prosecution had the burden of proof by a preponderance of the evidence that the defendant was a "dangerous special offender" within the meaning of the statute. If the prosecution met its burden, the court could impose a sentence on the defendant of up to 25 years, provided that the sentence was not disproportionate in severity to the maximum term authorized for the defendant's underlying felony conviction.

SRA sentencing proceedings bear more resemblance to the proceedings at issue in *DiFrancesco* than to the capital sentencing proceeding in *Bullington*. As in *DiFrancesco*, the prosecution must prove facts by a preponderance of the evidence at an SRA evidentiary hearing, rather than by proof beyond a reasonable doubt. Also, as in *DiFrancesco*, the factfinder's discretion under the SRA is structured, not eliminated. The Court in *Bullington* distinguished its earlier

decision in *DiFrancesco* on these two grounds.[1] *See Bulling-ton,* 451 U.S. at 440-41. We conclude that under *DiFrancesco* and *Bullington,* the evidentiary hearing held on remand did not violate the double jeopardy clause.

Strauss next argues that the trial court erred in finding on remand the aggravating factors of deliberate cruelty, sophistication and planning and abuse of a trust position because the Court of Appeals found that the evidence was insufficient to support each of these findings. *See Strauss,* 54 Wn. App. at 418, 420-21. Strauss also argues that the trial court erred in again relying on its observation that the defendant appeared intensely menacing at trial because the Court of Appeals determined that this observation could not support an exceptional sentence.

█ The State chose not to seek review from this court when the Court of Appeals issued its opinion in this case. The Court of Appeals thus issued a mandate to the trial court upon terminating its review of this case. *See* RAP 12.5. Upon issuing the mandate, the Court of Appeals decision became:

> effective and binding on the parties to the review and [the decision] govern[ed] all subsequent proceedings in the action in any court . . ..

RAP 12.2. The appellate court's decision became the law of the case and superseded the trial court's findings on every issue that the appellate court decided. *See Bailie Communications, Ltd. v. Trend Business Sys., Inc.,* 61 Wn. App. 151, 810 P.2d 12, 814 P.2d 699 (1991). The Court of Appeals explicitly held that the evidence did not support the findings of deliberate cruelty, sophistication and planning and abuse of a trust position. This determination became binding on the trial court once the Court of Appeals issued its mandate.

---

[1]The Court in *Bullington* also distinguished *DiFrancesco* on the ground that the prosecution in *Bullington* was seeking an opportunity to convince a second factfinder of its view of the facts, while the prosecution in *DiFrancesco* was not. *Bullington,* at 440. We note that, as in *DiFrancesco,* this is not a case where the State is seeking an opportunity to convince a second factfinder of its view of facts.

The trial court was also bound by the Court of Appeals determination that the defendant's menacing demeanor at trial did not support the imposition of an exceptional sentence. *Strauss*, at 418-22.

■ The State argues that the law of the case doctrine did not preclude the trial court on remand from reentering the same findings which were invalidated by the Court of Appeals. The State cites *State v. Sauve*, 33 Wn. App. 181, 652 P.2d 967 (1982), *aff'd*, 100 Wn.2d 84, 666 P.2d 894 (1983) as authority for this proposition. In *Sauve*, the court noted that "[t]he trial court may exercise independent judgment as to decisions to which error was *not* assigned in the prior review . . .." (Italics ours.) *Sauve*, at 183 n.2 (quoting comment to RAP 2.5(c)(1)). The court's observations in *Sauve* clearly do not apply to this case. The Court of Appeals explicitly held that the trial court erred in finding the aggravating factors at issue. At the remand hearing, the trial court heard evidence regarding the defendant's future dangerousness, and no new evidence came to light regarding the other aggravating factors which the Court of Appeals had invalidated. The State has failed to present any authority for the proposition that under these circumstances, a trial court may ignore an appellate court's determination on remand and reenter the same findings which the appellate court had earlier invalidated. The trial court on remand was bound by the law of the case. The court lacked the authority to enter the same findings that the Court of Appeals had earlier invalidated. An individual trial court is not free to determine which appellate court orders, if any, it chooses to follow. If a trial court were free to ignore such orders, total chaos would result in the court system.

We note that the law of the case doctrine has been restricted in some circumstances, none of which are applicable in this case. Under RAP 2.5(c)(2), this court may

> *at the instance of a party* review the propriety of an earlier decision of the appellate court in the same case and, where justice would best be served, decide the case on the basis of the appellate court's opinion of the law at the time of the later review.

(Italics ours.) The parties in this case have chosen not to request review from this court of the Court of Appeals decision, and have thus not presented arguments why justice would best be served by conducting such a review. The Court of Appeals determinations therefore remain the law of the case.

■ The defendant next challenges the trial court's finding of future dangerousness. A finding of future dangerousness can support an exceptional sentence in a sexual offense case. *State v. Pryor*, 115 Wn.2d 445, 799 P.2d 244 (1990); *see also State v. Post*, 118 Wn.2d 596, 615, 826 P.2d 172 (1992). This court recently determined in *State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991) that such a finding may not support the imposition of an exceptional sentence where the underlying offense is *non*sexual in nature. As this case involves an exceptional sentence imposed pursuant to a second degree rape conviction, the defendant's case is governed by *Pryor*, rather than by *Barnes*.

A trial court may impose an exceptional sentence based on a finding of future dangerousness in a sexual offense case where two conditions are met: (1) the defendant has a history of similar criminal acts; and (2) the defendant is not likely to be amenable to treatment. *Pryor*, at 454-55. Strauss raises several arguments why the trial court erred in finding that the criminal history requirement of *Pryor* has been met in this case. We will address each of these arguments before addressing the defendant's contentions regarding the second requirement under *Pryor*, that of non-amenability to treatment.

The defendant first argues that he was denied his right to confront witnesses at the sentencing hearing because D.E. did not appear at the hearing on remand. The confrontation clause contained in the sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . .." The United States Supreme Court has not addressed whether the term "in all criminal prosecutions" includes sentencing hearings.

The Court has held, however, that a defendant's due process rights at a sentencing hearing do not include an absolute right to confront witnesses. *Williams v. New York*, 337 U.S. 241, 250-52, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949); *see also United States v. Kikumura*, 918 F.2d 1084, 1102-03 (3d Cir. 1990); *United States v. Byrd*, 898 F.2d 450, 452-53 (5th Cir. 1990); *United States v. Beaulieu*, 893 F.2d 1177, 1180-81 (10th Cir.), *cert. denied*, 497 U.S. 1038, 111 L. Ed. 2d 811, 110 S. Ct. 3302 (1990); *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989).[2]

■ The defendant argues that this court should independently interpret the confrontation clause contained in article 1, section 22 of the Washington Constitution as applying at sentencing proceedings, even though the federal clause does not apply at such hearing. We do not reach this argument because even if the confrontation clause were to apply at sentencing hearings, the defendant has failed to establish that the clause was violated in his particular case. Because D.E.'s statement was properly admitted by the trial court under the excited utterance exception to the hearsay rule, the admission of the statement would not have violated the confrontation clause. *See State v. Palomo*, 113 Wn.2d 789, 797, 783 P.2d 575 (1989) (admission of an out-of-court declarant's statements under the excited utterance exception did not violate the defendant's constitutional right to confrontation), *cert. denied*, 498 U.S. 826, 112 L. Ed. 2d 53, 111 S. Ct. 80 (1990).

The United States Supreme Court has determined that a hearsay statement may be admissible at trial under the confrontation clause:

> if [the statement] bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.

---

[2]The Eighth Circuit held in *United States v. Fortier*, 911 F.2d 100, 103 (8th Cir. 1990) that the confrontation clause does apply at sentencing hearings, but has since decided to reconsider en banc the validity of this determination. *See State v. Wise*, 923 F.2d 86 (8th Cir.), *vacated and reh'g en banc granted* (Mar. 15, 1991).

*Idaho v. Wright*, 497 U.S. 805, 815, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990) (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980)). A statement that qualifies for admission under a " 'firmly rooted' hearsay exception is so trustworthy that adversarial testing can be expected to add little to its reliability." *White v. Illinois*, ___ U.S. ___, 116 L. Ed. 2d 848, 112 S. Ct. 736, 743 (1992); *see also State v. Chapin*, 118 Wn.2d 681, 685-86, 826 P.2d 194 (1992). In *White*, the Court noted that the excited utterance exception to the hearsay rule is a "firmly rooted" exception which satisfies the requirements of the confrontation clause. *White*, 112 S. Ct. at 742 n.8.[3]

█ An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). In this case, the defendant does not dispute that a sexual assault is a "startling event", or that D.E.'s statement referred to this event. The key determination is "whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment." *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194 (1969). The record supports the trial court's determination that D.E. was still under the influence of the incident when she made her statement to Officer Johal. When the officer took D.E.'s statement, D.E. was very distraught, very red in the face and crying. At the time, D.E. appeared to be in a state of shock resulting from the incident.

█ The defendant argues that the trial court erred in determining that D.E.'s statement to the officer qualified as an excited utterance because up to 3½ hours might have passed between the time D.E. fled from Strauss until the time the officer met her at the gas station. The passage of

---

[3]At issue in *White* was Illinois' spontaneous declaration exception to the hearsay rule. This exception is identical to Washington's excited utterance exception. *See White*, 112 S. Ct. at 740 n.1; ER 803(a)(2).

time between the startling event and the declarant's statement is a factor to be considered in determining whether the statement is an excited utterance. *State v. Woodward*, 32 Wn. App. 204, 206-07, 646 P.2d 135, *review denied,* 97 Wn.2d 1034 (1982). The passage of time alone, however, is not dispositive. *State v. Thomas*, 46 Wn. App. 280, 284, 730 P.2d 117 (1986) (trial court did not err in determining that statements made after a 6- to 7-hour time span qualified as excited utterances), *aff'd,* 110 Wn.2d 859, 757 P.2d 512 (1988); *State v. Flett*, 40 Wn. App. 277, 699 P.2d 774 (1985) (a statement made 7 hours after a rape was properly admitted as an excited utterance because of the declarant's "continuing stress" during that time period).

The trial court's determination that a statement falls within the excited utterance exception will not be disturbed absent an abuse of discretion. *Thomas*, at 284 (citing *Brewer v. Copeland*, 86 Wn.2d 58, 542 P.2d 445 (1975)). The record reflects that the trial court did not abuse its discretion in this case. The statement D.E. gave to the officer was properly found to be an excited utterance. Admission of the statement did not violate confrontation clause principles because the statement fell within a firmly rooted exception to the hearsay rule. We accordingly do not address the defendant's arguments regarding the applicability of the state constitution's confrontation clause at sentencing hearings. Even if the clause were determined to apply at sentencing hearings, the defendant's right to confront witnesses was not violated in this case.

The defendant next argues that the trial court erred in determining that the Rules of Evidence did not strictly apply at the SRA evidentiary hearing, and that the evidence which the trial court properly admitted does not support the finding that the criminal history requirement in *Pryor* has been satisfied. ER 101 provides as follows:

> These rules govern proceedings in the courts of the state of Washington *to the extent and with the exceptions stated in rule 1101*.

(Italics ours.) ER 101. ER 1101(c) provides that:

The rules (other than with respect to privileges)[4] need not be applied in the following situations:

. . . .

(3) . . . Proceedings for . . . sentencing . . ..

Strauss argues that RCW 9.94A.370(2) supersedes ER 1101(c) and requires that the Rules of Evidence apply at sentencing hearings. RCW 9.94A.370(2) provides, in part, as follows:

> Where the defendant disputes material facts [for sentencing purposes], the court must either not consider the fact or grant an *evidentiary* hearing on the point.

(Italics ours.) RCW 9.94A.370(2). Strauss maintains that the use of the word "evidentiary" in this statute indicates a legislative intent that the Rules of Evidence should apply at these sentencing hearings.

▐▐ We reject the defendant's argument. The court will not assume that the Legislature would attempt to effect a significant change in the law by mere implication. *State v. Calderon*, 102 Wn.2d 348, 351, 684 P.2d 1293 (1984). A significant change would be assumed if RCW 9.94A.370(2) is construed as mandating that the Rules of Evidence apply at sentencing hearings. Sentencing judges have traditionally been given discretion in the sources and types of evidence used for determining a defendant's sentence. *See State v. Herzog*, 112 Wn.2d 419, 424, 771 P.2d 739 (1989). The SRA has structured, not eliminated, the trial court's discretion in sentencing matters. *See* RCW 9.94A.120; *State v. Ammons*, 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796 (1986). The trial court did not err in determining that the Rules of Evidence do not strictly apply at sentencing hearings held pursuant to RCW 9.94A.370(2).

▐ While the Rules of Evidence do not strictly apply at such hearings, evidence admitted at a sentencing hearing must still meet due process requirements. *See Townsend v. Burke*, 334 U.S. 736, 741, 92 L. Ed. 1690, 68 S. Ct. 1252 (1948). The due process clause requires that a defendant in

---

[4]Strauss does not allege that any privilege existed with respect to the evidence presented at the remand hearing.

a sentencing hearing be given an opportunity to refute the evidence presented and that the evidence be reliable. *United States v. Giltner*, 889 F.2d 1004, 1007 (11th Cir. 1989); *United States v. Marshall*, 719 F.2d 887, 891 (7th Cir. 1982). Strauss cross-examined the witnesses who testified at the hearing, and was afforded the opportunity to refute the evidence presented. Strauss maintains, however, that the trial court based its decision on unreliable evidence.

Strauss first argues that D.E.'s hearsay statement made to Officer Johal was unreliable. The trial court properly found, however, that D.E.'s statement fell within the excited utterance exception to the hearsay rule. Moreover, D.E.'s statement describing the sexual assault was corroborated by Officer Johal's observation that D.E. had bruises and scratch marks on her throat and neck, as well as bruises and cuts on her lower back and lower left leg. Detective Trent also observed that D.E. had "puncture wounds" on her body on the morning after the attack. These "puncture wounds" corroborate D.E.'s account of how Strauss used a knife and broken beer bottle during the attack. D.E.'s statement was further corroborated by the knife and broken beer bottle Detective Trent found in Strauss' apartment, and by Strauss' admission that D.E. had been in his apartment that night. The human track prints Detective Trent found at the wooded area also tend to corroborate D.E.'s statement to the police. The evidence in the record substantially corroborates D.E.'s statement. As an excited utterance, D.E.'s statement bears an indicia of reliability sufficient to meet due process requirements at the sentencing hearing.

The defendant also questions the reliability of the lineup form N.W. completed indicating that she positively identified Strauss as her assailant. N.W.'s identification of Strauss is corroborated by Strauss' own guilty plea to the charge that he assaulted N.W. with a knife. Due to this guilty plea, the lineup form bears an indicia of reliability sufficient to meet due process requirements.

The evidence in the record supports the trial court's determination that Strauss raped D.E. and assaulted N.W.

with a knife. These two criminal acts by themselves support the trial court's finding that the criminal history requirement in *Pryor* has been satisfied in this case.

These acts in and of themselves, however, do not justify a departure from the defendant's standard sentencing range. *See Pryor*, 115 Wn.2d at 454; RCW 9.94A.370. Under *Pryor*, the defendant's amenability to treatment must be determined before the court can properly make a future dangerousness finding and depart from a defendant's standard range. *Pryor*, at 454.

> Requiring both similar criminal acts and lack of amenability to treatment fulfills two important considerations. First, it ensures that a defendant's criminal history, which has already been taken into account in determining the appropriate standard sentencing range, will not be used again to further enhance the same sentence without further proof of dangerousness. *See [State v.] Holyoak*, [49 Wn. App. 691,] 696-97[, 745 P.2d 515 (1987), *review denied*, 110 Wn.2d 1007 (1988)] (defendant's criminal history alone insufficient to justify enhanced sentence since it was already used to determine the appropriate offender score); *[State v.] Nordby*, [106 Wn.2d 514,] 518 n.4 [723 P.2d 1117 (1986)]. Second, amenability to treatment, or lack thereof, is crucial in assessing the likelihood an individual may pose a danger to the public in the future.

*Pryor*, at 453-54.

In *Pryor*, the defendant's community corrections officer determined that the defendant " 'refuses to accept responsibility for his actions or seek professional help.' " *Pryor*, at 455. The court in *Pryor* found that this determination alone was not sufficient to support a finding that a defendant was not amenable to treatment. The court determined that at a minimum, the sentencing court must have before it the opinion of a mental health professional that the defendant would likely not be amenable to treatment. *Pryor*, at 455.

Strauss argues that the trial court erred in finding that he was not amenable to treatment without the benefit of a mental health care professional's opinion. In this case, the record reflects that a community corrections officer testified that Strauss was not amenable to treatment. A mental

health care professional did not evaluate Strauss. The State has failed to present persuasive arguments why this court should reconsider its determination in *Pryor* that a mental health care professional's opinion is necessary to determine a defendant's amenability to treatment. The trial court erred in finding future dangerousness without the benefit of having such an opinion in this case.

In *Pryor*, the court remanded the case for resentencing and remarked that:

> It should be noted that since this case is remanded for resentencing, it will be possible for the trial court to order defendant formally be evaluated by a mental health professional before resentencing.

*Pryor*, at 456-57. As in *Pryor*, we remand this case to the trial court for resentencing, making it possible for the trial court to order that Strauss be formally evaluated by a mental health care professional for the purpose of determining the defendant's amenability to treatment.

In conclusion, we have reviewed the defendant's remaining arguments and find that they lack merit. We vacate the findings that the trial court made on remand which are inconsistent with the Court of Appeals determination in this case. The remaining aggravating factor at issue in this case is that of future dangerousness. An exceptional sentence may be based solely on a trial court's finding of future dangerousness. *See State v. Post*, 118 Wn.2d 596, 826 P.2d 172 (1992) (where this court affirmed the defendant's exceptional sentence of 180 months based solely on the trial court's finding of future dangerousness). Such a finding cannot be made, however, without the benefit of a mental health care professional's evaluation of the defendant. Accordingly, we remand the case to the trial court for proceedings consistent with this opinion.

DORE, C.J., and UTTER, DOLLIVER, DURHAM, and SMITH, JJ., concur.

ANDERSEN, J. (concurring) — I concur in the majority opinion but write separately to express my disagreement with the Court of Appeals determination in its published opinion that Mr. Strauss did not demonstrate deliberate cruelty toward his rape victim. *State v. Strauss*, 54 Wn. App. 408, 419, 773 P.2d 898 (1989). Based on this record I could not have found that the trial judge's finding in that regard was "clearly erroneous". It appears that the conduct of Mr. Strauss was significantly more egregious and serious than typical of the crime of rape in the second degree. *State v. Hicks*, 61 Wn. App. 923, 928, 812 P.2d 893 (1991); *State v. Holyoak*, 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied*, 110 Wn.2d 1007 (1988). Had this issue been before us, I would have found that deliberate cruelty on the part of Mr. Strauss was demonstrated and that it justified the imposition of the exceptional sentence in this case. The State did not, however, cross-appeal on this issue and, as the majority opinion correctly notes, the law of the case doctrine prevents our considering it at this point.

BRACHTENBACH and GUY, JJ., concur with ANDERSEN, J.