# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                          |   |                        |
|--------------------------|---|------------------------|
| STATE OF WASHINGTON,     | ) | No. 67424-2-I          |
|                          | ) |                        |
| Respondent,              | ) | DIVISION ONE           |
|                          | ) |                        |
| v.                       | ) |                        |
|                          | ) |                        |
| MANUEL VILLAREAL-CRUZ     | ) | UNPUBLISHED            |
|                          | ) |                        |
| Appellant.               | ) | FILED: March 11, 2013  |
|                          | ) |                        |

Cox, J. — Manuel Villareal-Cruz appeals his conviction of rape of a child in the first degree and three counts of violation of a no contact order claiming that the victim's statements to a police detective were inadmissible hearsay. We hold that the court did not abuse its discretion by admitting these statements as excited utterances. Additionally, the arguments Villareal-Cruz makes in his Statements of Additional Ground for Review are not persuasive. We affirm.

In 2010, Villareal-Cruz dropped his daughter, sixth-grader S.M., off 20 minutes late for school. School officials observed that S.M. was emotional and looked scared when she arrived. After several hours, school officials permitted S.M. to return home because she reported that she did not feel well.

When S.M. returned home, she was visibly upset. Her uncle grew concerned about what had happened to her and called 911. Officer Allen Bass arrived first, and S.M.'s mother told him that Villareal-Cruz had raped S.M. Later, Detective Gina Crosswhite interviewed S.M. When Detective Crosswhite asked

S.M. whether she knew why she was interviewing her, S.M. began crying. S.M. then told Detective Crosswhite that Villareal-Cruz had raped her.

After her interview with S.M., Detective Crosswhite took the child and her mother and siblings to the emergency room, where a nurse examined S.M. S.M. told the examining nurse the same account of the rape she had related to Detective Crosswhite. The nurse found that, consistent with S.M.'s account of the rape, she had what appeared to be semen on her stomach. The nurse also found S.M. had injuries to her vaginal tissue.

Another Bellingham detective interviewed Villareal-Cruz on the day of the rape. During this interview, which was recorded, Villareal-Cruz explained that, on the morning of the rape, he had asked S.M. if she "wanted to do things." He then drove S.M. to a dead end street, helped her take off her pants, and had intercourse with her. At trial, Villareal-Cruz changed his story and testified that he did not have intercourse with S.M. The videotape of Villareal-Cruz's admission was played for the jury.

After crime lab testing of various pieces of evidence, DNA matching Villareal-Cruz's was found on S.M.'s stomach. DNA matching S.M.'s was found on Villareal-Cruz's boxers. Finally, DNA matching both Villareal-Cruz's and S.M.'s were present on a wet spot found in the car in which Villareal-Cruz drove S.M. to school on the day of the rape. The fabric also tested positive for semen.

The State charged Villareal-Cruz with one count of rape of a child in the first degree, two counts of intimidating a witness, and three counts of violation of a no-contact order.

At trial, S.M. recanted her account of being raped and testified that she had made up the story because she and her mother wanted Villareal-Cruz to stop drinking. S.M.'s mother also recanted, testifying that she had helped S.M. make up her allegations. The examining nurse, the lab technician who examined the evidence in the case, Detective Crosswhite, and the detective who interviewed Villareal-Cruz, all testified at trial and provided evidence of Villareal-Cruz's rape of S.M.

Prior to sending the case to the jury, the trial court dismissed the intimidation of a witness charge. The jury convicted Villareal-Cruz of all other counts charged.

Villareal-Cruz appeals.

## EXCITED UTTERANCE

Villareal-Cruz argues that the trial court abused its discretion when it admitted S.M.'s statements to Detective Crosswhite under the excited utterance exception to the hearsay rule. We disagree.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."[1] It is not admissible unless an exception applies.[2] "A statement that qualifies for admission under 'a firmly rooted hearsay exception is so trustworthy that adversarial testing can be expected to add little to its

---

[1] ER 801(c).

[2] ER 802.

3

reliability.'"[3] An excited utterance is such an exception. Under ER 803(a)(2) an excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[4]

Essential to determining whether a statement qualifies as an excited utterance "is 'whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'"[5] "[T]he startling event or condition that must occur for purposes of the excited utterance exception need not be the 'principal act' underlying the case."[6] And, while "[t]he passage of time between the startling event and the declarant's statement is a factor to be considered in determining whether the statement is an excited utterance . . . [it] is not dispositive."[7] Determining whether a statement qualifies as an excited utterance is a fact-specific inquiry.[8] We review a trial court's

---

[3] State v. Chapin, 118 Wn.2d 681, 685-86, 826 P.2d 194 (1992) (quoting White v. Illinois, 502 U.S. 346, 357, 112 S. Ct. 736, 116 L. Ed. 2d 848 (1992)).

[4] ER 803(a)(2).

[5] State v. Strauss, 119 Wn.2d 401, 416, 832 P.2d 78 (1992) (alteration in original) (quoting Johnston v. Ohls, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)).

[6] Chapin, 118 Wn.2d at 686 (quoting 6 JAMES HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1753, at 225-26 (James H. Chadbourn rev. ed. 1974)).

[7] Strauss, 119 Wn.2d at 416-17 (citations omitted).

[8] State v. Brown, 127 Wn.2d 749, 757-59, 903 P.2d 459 (1995).

determination that a statement qualifies as an excited utterance for an abuse of discretion.[9]

In State v. Thomas, this court held that a statement made by a rape victim constituted an excited utterance.[10] There, S.C. testified that Thomas had intercourse with her early in the morning, and she then cried herself to sleep.[11] S.C. left Thomas's house at 11 a.m. and telephoned her mother at 11:30 a.m.[12] S.C.'s mother testified that S.C. was very upset and told her that she had just been raped.[13] This court held that though the record reflected a six to seven-hour time span, the record supported the trial court's determination that "S.C. was still upset when she called her mother."[14]

Similarly, in State v. Flett, Division Three held that a rape victim's statement made to her daughter seven hours after the alleged incident was admissible as an excited utterance.[15] There, after Flett raped her, the victim went to work at a grocery store where she encountered the rapist's wife.[16] The court held that "events which transpired in the 7-hour period—the rape . . . and

---

[9] Strauss, 119 Wn.2d at 417.

[10] 46 Wn. App. 280, 284-85, 730 P.2d 117 (1986).

[11] Id. at 282.

[12] Id.

[13] Id. at 282-83.

[14] Id. at 284-85.

[15] 40 Wn. App. 277, 287, 699 P.2d 774 (1985).

[16] Id.

the stress of contact with Mrs. Flett in the store just prior to the statement—were all part of a 'continuous process' satisfying the elements of the excited utterance exception."[17]

Here, S.M.'s behavior supported the trial court's conclusion that her statement to Detective Crosswhite constituted an excited utterance. After explaining the interview process to S.M., Detective Crosswhite asked S.M. "[d]o you know why I'm here today?" Detective Crosswhite testified that S.M. then "indicated she did, and without me even asking an open-ended question like tell me what happened, she started crying, and she just told me everything about that morning." S.M. continued crying throughout the interview, which lasted between 30 and 40 minutes.

Though Villareal-Cruz raped S.M. five hours prior to her statement to the detective, as this court previously noted, passage of time does not automatically indicate that a statement is not an excited utterance.[18] And, as in Flett and Thomas, S.M.'s behavior demonstrated that she was still under the effect of this traumatic event.

Further, prior to S.M.'s statement to the detective, she had arrived at school upset, left school at least in part due to her emotional state, and was visibly distraught when she returned home. Prior to her interview with the detective, S.M. had been in the same room with Villareal-Cruz for a sustained period of time. As in Flett, these events were likely part of a "'continuous

---

[17] Id.

[18] Strauss, 119 Wn.2d at 416-17.

process'" of stress.[19] Thus, the trial court did not abuse its discretion when it determined that S.M.'s statements to the detective were admissible as excited utterances.

Villareal-Cruz argues that the passage of six hours between the rape and S.M.'s statements resulted in time for S.M. "to exercise choice and judgment when she answered Crosswhite's questions." But, as noted above, passage of time between the startling event and the statement does not automatically indicate that it is not an excited utterance.[20] Washington cases have previously held that a statement made after six or seven hours could constitute an excited utterance under the proper circumstances. And S.M.'s behavior here supported the trial court's admission of the evidence.

Villareal-Cruz also contends that S.M.'s quiet and relatively calm demeanor before her interview with Detective Crosswhite gave "'every indication that, if motivated to do so, she could have fabricated some of the details.'"[21] But, just as passage of time is not dispositive, an individual can be "under the stress of excitement caused by" a startling condition even if she has been calm for a period of time prior to her excited utterance.[22] Thus, in Flett, the victim's

---

[19] Flett, 40 Wn. App. at 287.

[20] Strauss, 119 Wn.2d at 416-17.

[21] Brief of Appellant at 15 (quoting Dixon, 37 Wn. App. at 874).

[22] ER 803(a)(3).

7

statement to her daughter after she had worked at a grocery store for several hours, still constituted an excited utterance.[23]

Villareal-Cruz cites State v. Chapin[24] and State v. Dixon[25] to support his argument regarding the passage of time and S.M.'s demeanor. But these cases are distinguishable. In Chapin, a patient with Alzheimer's disease told his wife, in response to her questions, that a nurse had raped him a day or so earlier.[26] The supreme court pointed out that the patient had been "calm and had engaged in his usual activities" prior to his statement and that it had been made only after his wife "calmed him down and in response to her question as to why he was angry with Chapin."[27] It then held that the patient's statement did not constitute an excited utterance.[28] Here, while S.M. was quiet and unemotional when Detective Crosswhite arrived at the house, S.M. began crying and continued to cry throughout her statement to the detective. Thus, the victim's emotional state when she made her statements is distinct from that in Chapin and supports the trial court's admission of these statements.

S.M.'s statements to Detective Crosswhite were also unlike the victim's statement in Dixon. There, this court held that the victim's four-page written

---

[23] Flett 40 Wn. App. at 286-87.

[24] 118 Wn.2d 681, 826 P.2d 194 (1992).

[25] 37 Wn. App. 867, 684 P.2d 725 (1984).

[26] Chapin, 118 Wn.2d at 683-84.

[27] Id. at 689, 690.

[28] Id. at 691.

8

statement given to a police officer was too detailed to constitute an excited utterance.[29] The court noted that the victim added several lines of additional details to the statement "with the explanation that [she] remembered them after giving 3 1/2 pages of her statement."[30] It then concluded that the trial court "went too far in admitting this detailed 4-page statement as an excited utterance."[31] Here, however, Detective Crosswhite interviewed S.M. for only 30 to 40 minutes. There is no indication that her statements to the detective constituted a complete, detailed account of her rape, nor did the trial court admit an entire written account for the jury to review. Thus, it was properly admitted.

## STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds, Villareal-Cruz essentially argues that there was insufficient evidence to convict him of first degree rape of a child. Villareal-Cruz also appears to argue that S.M. and her mother falsely accused him of rape. There is no substantive argument to support either claim. Accordingly, we need not review them.[32]

---

[29] Dixon, 37 Wn. App. at 873-74.

[30] Id. at 873.

[31] Id. at 874.

[32] State v. Johnson, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992).

9

We affirm the judgment and sentence.

_____Cox, J._____

WE CONCUR:

_____          _____Becker, J._____