IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | No. 34947-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICK ADAM KELLY, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Rick Kelly appeals after his conviction for fourth degree assault—domestic violence. Mr. Kelly argues the court improperly admitted the victim's statement to law enforcement as an excited utterance and that the court erred by imposing $700 in mandatory legal financial obligations (LFOs). We affirm.

FACTS

Mr. Kelly and Rachel Pritchard were living together at Ms. Pritchard's home. Ms. Pritchard asked Mr. Kelly for her laptop because she needed it for work. An argument ensued about Mr. Kelly wanting to remove private items from the computer. Ms. Pritchard then said she would take back a cell phone she had given him. As she reached

for the cell phone, Mr. Kelly wrapped his arm around her neck, jerked her down on the bed, and strangled her for about 10 seconds before letting her go.

Ms. Pritchard then called 911. About 20 or 30 minutes later, Spokane County Sheriff's deputies arrived at her home. Deputy Branson Schmidt first spoke with Mr. Kelly. Mr. Kelly denied doing anything improper. Deputy Schmidt then spoke with Ms. Pritchard. Ms. Pritchard told the deputy the events described above. As she did so, she was hysterical, and had to repeatedly stop because she was sobbing. The deputy observed a very large red mark over Ms. Pritchard's throat.

The State charged Mr. Kelly with second degree assault by strangulation. Prior to trial, Mr. Kelly moved to exclude Ms. Pritchard's statement to Deputy Schmidt. The trial court reserved judgment on the motion. At trial, Ms. Pritchard testified consistent with her previous statement. She also testified that after being assaulted she called her mother, and her mother arrived at her home and removed her children.

The State called Deputy Schmidt and asked him to testify about Ms. Pritchard's statements to him. Mr. Kelly renewed his objection, and the trial court allowed the testimony. Deputy Schmidt then testified to what Ms. Pritchard had told him. Mr. Kelly testified in his own defense and denied assaulting Ms. Pritchard.

The jury acquitted Mr. Kelly of the felony charge, but found him guilty of the lesser included offense of fourth degree assault—domestic violence. The trial court sentenced Mr. Kelly and imposed $700 in mandatory LFOs. Mr. Kelly did not object to the imposition of the mandatory LFOs.

Mr. Kelly appealed.

## ANALYSIS

### A.    EXCITED UTTERANCE HEARSAY EXCEPTION

Mr. Kelly claims the trial court erred by allowing Deputy Schmidt to recount what Ms. Pritchard told him 20 or 30 minutes after the purported assault. Specifically, he contends the statements do not qualify under the excited utterance exception to hearsay because Ms. Pritchard was not continuously under the stress of the event.

An appellate court reviews a trial court's determination that a hearsay statement falls within the excited utterance exception for abuse of discretion. *State v. Ohlson*, 162 Wn.2d 1, 7-8, 168 P.3d 1273 (2007). The trial court's decision will not be reversed unless no reasonable judge would have made the same ruling. *State v. Woods*, 143 Wn.2d 561, 595-96, 23 P.3d 1046 (2001).

The party seeking to admit the hearsay under the excited utterance exception must satisfy three closely connected requirements: "that (1) a startling event or condition

occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition." *State v. Young*, 160 Wn.2d 799, 806, 161 P.3d 967 (2007). Mr. Kelly challenges the second requirement.

The rationale for the hearsay exception is that due to the stress from the startling event, the declarant will have little chance of misrepresentation or conscious fabrication. *State v. Flett*, 40 Wn. App. 277, 286, 699 P.2d 774 (1985). To determine whether the declarant was under the stress from the event, courts consider the time elapsed since the event, and the declarant's visible level of emotional stress. *State v. Strauss*, 119 Wn.2d 401, 416-17, 832 P.2d 78 (1992). The longer the time interval, the greater the need for proof that the declarant did not actually engage in reflective thought. *State v. Chapin*, 118 Wn.2d 681, 688, 826 P.2d 194 (1992).

Prior to admitting the statement, the trial judge must make a preliminary finding that the declarant was still under the influence of the event at the time the statement was made. *State v. Ramires*, 109 Wn. App. 749, 757-58, 37 P.3d 343 (2002). This is a highly factual determination. *Id.* at 758. Evidence that the declarant has calmed down before making a statement tends to negate a finding that the declarant was still under the influence of the event. *Id.*

Here, the statement was made approximately 20 to 30 minutes following the startling event. This interval is much less than other intervals where courts have upheld a trial court's finding that the declarant was still under the stress of the event. *See e.g.*, *Strauss*, 119 Wn.2d at 416 (more than three hours after rape); *Flett*, 40 Wn. App. at 286-87 (seven hours after rape). Because the interval was not overly long, the State was not required to establish that Ms. Pritchard did not engage in reflective thought.

Ms. Pritchard showed obvious signs of emotional stress when she recounted to Deputy Schmidt what had occurred. She was hysterical and sobbing uncontrollably, and she had to stop multiple times during her statement to cry and sob. These clear signs of emotional stress weigh in favor of admissibility of the challenged statements.

Mr. Kelly argues that Ms. Pritchard was not continuously under the stress of the startling event because "[Ms.] Pritchard had extricated herself from the basement, called 911, cared for her children, put them in the care of her mother, and stood in the driveway . . . ." Br. of Appellant at 9. Mr. Kelly's statement is not entirely accurate. Although Ms. Pritchard called 911 and then her mother, her mother drove to her home and removed the children before law enforcement arrived. The fact that Ms. Pritchard contacted law enforcement and a close relative to provide safety for herself and her children does not establish the sort of reflective thought that would diminish admissibility of the challenged

5

statement. To the contrary, taking immediate steps to protect oneself and one's children from harm is consistent with an ongoing emergency situation.

We conclude that the trial court did not abuse its discretion when it found that Ms. Pritchard was still under the stress of the assault when she spoke with law enforcement 20 to 30 minutes later.

B.     MANDATORY LFOS

Mr. Kelly contends that the trial court erred by imposing the $500 victim assessment under RCW 7.68.035(1)(a) and $200 in court costs under RCW 36.18.020(2)(h)—both mandatory LFOs—without evaluating his ability to pay. We disagree. Mandatory LFOs are required irrespective of the defendant's ability to pay. *State v. Lundy*, 176 Wn. App. 96, 103, 308 P.3d 755 (2013); *State v. Kuster*, 175 Wn. App. 420, 424, 306 P.3d 1022 (2013).

Mr. Kelly also contends that the imposition of mandatory LFOs violates equal protection and his substantive due process rights. These constitutional arguments fail for the reasons set forth in *State v. Mathers*, 193 Wn. App. 913, 924-28, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015, 380 P.3d 482 (2016).

We conclude that the trial court properly imposed the mandatory LFOs without regard to Mr. Kelly's ability to pay.

No. 34947-1-III
*State v. Kelly*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

7