161 P.3d 967 (2007)
STATE of Washington, Respondent,
v.
Henry Eugene YOUNG, Petitioner.
No. 76533-2.
Supreme Court of Washington, En Banc.
Argued October 11, 2005.
Decided July 12, 2007.
*969 Gregory Charles Link, Washington Appellate Project, Seattle, WA, for Petitioner.
Lee Davis Yates, King County Prosecutor's Office, Seattle, WA, for Respondent.
MARY E. FAIRHURST, Justice.
¶ 1 In a pretrial hearing, the trial court determined that hearsay statements were admissible as excited utterances even though the declarant later recanted the statements, the circumstances surrounding the statements provided the only corroboration that a startling event occurred, and minor discrepancies existed in the witnesses' testimony about the content of the statements. We hold that the trial court did not abuse its discretion by admitting the hearsay statements as excited utterances and affirm the Court of Appeals.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 2 The petitioner, Henry Eugene Young, first met 11 year old K.L., the alleged victim, in April 2002. They met on a bus while K.L. was with her adult friend and baby-sitter of more than three years, Anne Johnson. Johnson lived across the street from K.L. When Young asked Johnson for her telephone number, Johnson gave him K.L.'s number because she was "always over there" at K.L.'s house. 5 Report of Proceedings (RP) at 326.[1] When Johnson decided later that day that she no longer wanted to speak *970 with Young, he began calling K.L.'s mother, Kayla. Young and Kayla commenced a romantic relationship.[2]
¶ 3 On May 2, 2002, Young spent the night at Kayla and K.L.'s house. On the afternoon of May 3, 2002, Kayla was at work and Young was still at the house when K.L. and her seven year old brother returned home from school. Johnson was in her residence across the street with Jason Barnes and other friends, including Perry Lomax. Barnes testified that K.L. came crying to the door of the house and "ran in" asking for Johnson.[3] 3 RP at 82.
¶ 4 Johnson testified that K.L. told her that Young had instructed K.L. to clean her bedroom and bathroom. 3 RP at 64. K.L. then said that while she was cleaning, Young put his hand down her pants "underneath her panties and grabbed her butt." Id. K.L. also described how Young attempted to put money "down her back pocket" and tried to "undo her belt." 3 RP at 64-65. K.L. was crying throughout their conversation. 3 RP at 65. Johnson described K.L. as appearing "really scared" and "upset." Id. At one point, Johnson tried to give K.L. a hug but K.L. backed away and would not hug her. Id. Johnson testified that K.L. had never done that before. 5 RP at 333.
¶ 5 Barnes and Lomax testified that after K.L. spoke with Johnson, K.L. told them what had occurred. Barnes had known K.L. for three to four years and said he was "like a big brother to her." 3 RP at 81. He testified that K.L. said Young offered her money, "she asked him what was it for, and he said, `You know what it's for.' And he proceeded to stick his hands down her pants." 3 RP at 85-86. Barnes testified that K.L. showed him the money Young gave her. 5 RP at 453. Barnes stated that throughout her story K.L. was "crying really hard," 3 RP at 83, and that he had never seen her so upset. 3 RP at 86.
¶ 6 Lomax, who had met K.L. six or seven times and had seen her at church, heard K.L. talking to Barnes. He heard K.L. say that Young had been "touching her and making her feel uncomfortable" and that he had tried "to put money in her back pocket." 3 RP at 97. K.L. said that Young had "put[] his hands down her pants" and "touch[ed] on her panties" Id. Lomax said K.L. did not stop crying, id., and described her as "borderline hysterical." 3 RP at 99.
¶ 7 After talking to K.L., Barnes testified that he walked across the street to her house and asked Young what happened. 3 RP at 89. Barnes testified that Young replied, "`I don't [know] what you're talking about. I don't want the police here. I don't want no trouble.'" 5 RP at 455. Barnes testified that he had not mentioned anything to Young about calling the police. Id. Barnes returned to his house to determine whether K.L. was sure she was telling the whole truth.[4] 3 RP at 89. K.L. said she was positive and that she had no reason to lie to Barnes. 3 RP at 91. Barnes and Lomax then returned to K.L.'s house to confront Young. 3 RP at 92. Barnes testified that this time nobody answered the door and that he saw someone jumping over the fence and out of the backyard. Id. At trial, Barnes testified that he could see that the person jumping over the fence was Young. 5 RP at 458. Later that day, the authorities responded to the incident.
¶ 8 The prosecuting attorney charged Young with one count of attempted child molestation in the first degree and, in the alternative, one count of communication with *971 a minor for immoral purposes. While Young was incarcerated, K.L. wrote him a letter of apology, in which she did not recant her accusations against Young. On August 24, 2002, K.L. wrote another letter, witnessed by Kayla and notarized, recanting her statements that Young had touched her inappropriately. The letter stated that K.L. fabricated the story because she was angry with Young for trying to go out with Johnson and her mother.
¶ 9 Prior to trial, the trial court held a hearing to determine the admissibility of K.L.'s hearsay statements to Johnson, Barnes, and Lomax. The trial court heard testimony about the events on May 3, 2002, up to Barnes' second visit to K.L.'s house, after asking K.L. to confirm her story. At that point, the court indicated that it only wanted to know about "the circumstances surrounding any statement [K.L.] made at the time and what her condition was," because that was what was relevant to determining whether the statements were excited utterances. 3 RP at 92. After considering the reliability of the hearsay statements, the trial court admitted them as excited utterances.
¶ 10 At trial, in addition to other evidence, K.L. testified that Young did not touch her inappropriately and that Johnson told her to tell Barnes and the others that Young had put his hands down her pants. K.L. stated that she appeared to cry to make her story look real so that Barnes would be angry enough to force Young to leave her house. Johnson, Barnes, and Lomax testified about K.L.'s statements to them.[5]
¶ 11 The jury convicted Young of one count of attempted child molestation in the first degree. Young had two prior rape convictions, one as a juvenile and one as an adult. The adult conviction qualified Young as a persistent offender, and the trial court sentenced him to life imprisonment without the possibility of release. Young appealed his conviction on multiple grounds and the Court of Appeals affirmed in a partially published opinion. State v. Young, 123 Wash.App. 854, 99 P.3d 1244 (2004). We granted Young's subsequent petition for review on the excited utterance issues only. State v. Young, 154 Wash.2d 1025, 120 P.3d 74 (2005).

II. ISSUES
A. Does a trial court abuse its discretion by admitting a hearsay statement as an excited utterance when the declarant has recanted the statement?
B. Does a hearsay statement qualify as an excited utterance when the circumstances surrounding the statement provide the only corroboration that a startling event occurred?
C. Must a proponent of excited utterance evidence establish the exact content of the declarant's statement before the statement is admissible as an excited utterance?

III. STANDARD OF REVIEW
¶ 12 This court reviews for abuse of discretion a trial court's decision to admit a hearsay statement as an excited utterance. State v. Woods, 143 Wash.2d 561, 597, 23 P.3d 1046 (2001); State v. Strauss, 119 Wash.2d 401, 417, 832 P.2d 78 (1992). Young argues that this court's decision in State v. Brown, 127 Wash.2d 749, 903 P.2d 459 (1995), limits the discretion given to trial courts to admit excited utterances. Pet. for Review at 7. In Brown, we said:
While we are sympathetic to the Court of Appeals' desire to defer to the trial court's evaluation of the complaining witness' credibility and hence ultimately of the [statement's] reliability, this approach has no place in the excited utterance rule.
127 Wash.2d at 758, 903 P.2d 459.
¶ 13 However, in 2001 we reaffirmed that the deferential abuse of discretion standard should be used in reviewing a trial court's decision to admit an excited utterance. Woods, 143 Wash.2d at 597-98, 23 P.3d 1046 (citing State v. Briscoeray, 95 Wash.App. 167, 171, 974 P.2d 912 (1999)). In so doing, we adopted the Court of Appeals analysis in Briscoeray, which clarified that our decision *972 in Brown did not alter the standard of review in excited utterance cases.
We read Brown to say that the trial court abused its discretion in that case, not that the abuse of discretion standard is improper in excited utterance cases generally.
The trial court in Brown abused its discretion in admitting the statements at issue, because it improperly applied the excited utterance rule.
Briscoeray, 95 Wash.App. at 171-72, 974 P.2d 912. Thus, we review the trial court's admission of the hearsay statements as excited utterances for an abuse of discretion.

IV. ANALYSIS
¶ 14 Under ER 803(a)(2), a statement is not excluded as hearsay if it is an excited utterance "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." This court has recognized that the proponent of excited utterance evidence must satisfy three "closely connected requirements" that (1) a startling event or condition occurred, (2) the declarant made the statement while under the stress of excitement of the startling event or condition, and (3) the statement related to the startling event or condition. Woods, 143 Wash.2d at 597, 23 P.3d 1046; State v. Chapin, 118 Wash.2d 681, 686, 826 P.2d 194 (1992).
A. Recantation
¶ 15 Young offers alternative approaches to resolve this case. Young first argues that Brown established a bright-line rule that when a declarant later recants her hearsay statements, those statements are not admissible as excited utterances. We reject this argumentBrown established no such rule. Brown stands for the proposition that when there is undisputed evidence that a declarant fabricated her hearsay statements, the second element of an excited utterancethat the statement was made under the influence of a startling eventis not satisfied.
¶ 16 In Brown, the declarant, T.G., called 911 to report that she had been raped. 127 Wash.2d at 751, 903 P.2d 459. T.G. told the responding officer that "she had been abducted, forced into her neighbor Brown's apartment, and then raped by four men." Id. At a pretrial hearing, the trial court admitted T.G.'s 911 call as an excited utterance. Id. at 752, 903 P.2d 459. At trial, T.G. recanted her statement that she had been abducted. Id. T.G. testified that she went willingly to Brown's apartment and admitted she called 911 only after making the decision to fabricate the abduction portion of her story. Id. at 753, 903 P.2d 459. After T.G.'s testimony, the trial court overruled Brown's objection that the 911 call was not an excited utterance. Id.
¶ 17 On appeal, this court held that the trial court abused its discretion by admitting the call as an excited utterance because it was undisputed that T.G. had the opportunity to and did in fact fabricate part of her story. Id. at 758-59, 903 P.2d 459. We acknowledged that the theory of the excited utterance exception is that
"`under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control.' The utterance of a person in such a state is believed to be `a spontaneous and sincere response . . .' rather than an expression based on reflection or self-interest."
Id. at 758, 903 P.2d 459 (quoting Chapin, 118 Wash.2d at 686, 826 P.2d 194 (quoting 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIAL AT COMMON LAW § 1747, at 195 (James H. Chadbourn rev. ed.1976))). We therefore reasoned that the "`key determination is whether the statement was made while the declarant was still under the influence of the event to the extent that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Strauss, 119 Wash.2d at 416, 832 P.2d 78). Brown did not establish a rule that a recanted hearsay statement can never be admitted as an excited utterance. It rather focused on the second element of an excited utterance-whether the statement was made while under the influence of the startling event.
*973 ¶ 18 Regarding excited utterances and recantation, we adopt the Court of Appeals analysis in Briscoeray that the trial court may weigh the reliability of the alleged excited utterance against the credibility of the recantation in determining admissibility. "If the witness later recants, the trial court does not err by weighing the witness's credibility against the evidence indicating that the statements were spontaneous and reliable." Briscoeray, 95 Wash.App. at 173, 974 P.2d 912.
¶ 19 Our rule reflects appropriately the substantial difference between undisputed fabrication and mere recantation. In Brown, the State did not challenge the credibility of T.G.'s recantationall the parties agreed that T.G. was not abducted, making the fabrication undisputed. In this case, as in Briscoeray, the trial court made a specific finding that K.L.'s recantation was not credible. The trial court also made a specific finding that K.L.'s earlier statements were reliable because of K.L.'s emotional state at the time, the lack of opportunity for her to fabricate, and the other witnesses' knowledge of and experience with K.L. Since Young did not definitively establish that K.L. fabricated her initial statements, the reasoning from Brown regarding subsequent recantation does not apply.
¶ 20 We hold that it is not an abuse of discretion for a trial court to weigh the credibility of a recantation against the evidence that a statement is reliable because it was made spontaneously while under the influence of a startling event and to determine that the statement is admissible as an excited utterance. As a result, we reject the proffered bright-line rule that an excited utterance is never admissible once it has been recanted. Adopting such a bright-line rule would ignore the reality that recantations may also be fabricated, often as a result of pressure from other interested parties.
¶ 21 In this case, the trial court, after considering both K.L.'s statements and her recantation, determined that the statements were admissible as excited utterances notwithstanding the recantation. In so doing, the trial court did not abuse its discretion.
B. Corroboration of the Startling Event
¶ 22 Because we reject Young's proffered bright-line rule barring admission of recanted statements as excited utterances, we now address Young's second argument. Young argues that the proponent of excited utterance evidence must produce independent corroborative proof that the startling event occurred in order to satisfy the first element of the excited utterance exception. We agree that the declarant's statement alonethe bare words of the utteranceis insufficient to corroborate the occurrence of a startling event. However, we hold that circumstantial evidence, independent from those bare words, can corroborate that a startling event occurred, and such corroboration can be sufficient to satisfy the first element of the excited utterance exception. We find that the circumstantial evidence presented in this case sufficiently corroborated the occurrence of a startling event that the trial court did not abuse its discretion by admitting K.L.'s statements as excited utterances.
¶ 23 Whether the proponent of excited utterance evidence must produce independent corroborative proof that a startling event or condition occurred is an issue of first impression in Washington. We initially observe that the declarant's statement, itself, consists of no more than bare words. Words alone, the content of the declarant's statement, can establish only the third element of the excited utterance testthat the utterance relates to the event causing the declarant's excitement. The first and second elements (that a startling event or condition occurred and that the declarant made the statement while under the stress thereof) must therefore be established by evidence extrinsic to the declarant's bare words. Extrinsic evidence can include circumstantial evidence, such as the declarant's behavior, appearance, and condition, appraisals of the declarant by others, and the circumstances under which the statement is made.
¶ 24 The question presented for our consideration is what quantum of evidence, independent of the declarant's bare words, is required to establish that a startling event or condition occurred. We determine our answer by examining this court's previous *974 statements regarding the issue, the plain language of ER 803(a)(2), the theory supporting the excited utterance exception, and guidance from evidence law treatises and foreign jurisdictions.
¶ 25 This court has recognized that "the startling event or condition . . . need not be the `principal act' underlying the case." Chapin, 118 Wash.2d at 686, 826 P.2d 194 (quoting WIGMORE, supra, § 1753, at 225-26). A later event may recreate "stress earlier produced and caus[e] the person to exclaim spontaneously." Id. at 687, 826 P.2d 194. In such a situation, it is the later event, not the original trauma, that satisfies the first element of the excited utterance exception. Id. at 686-87, 826 P.2d 194 (discussing with favor United States v. Napier, 518 F.2d 316, 316-18 (9th Cir.1975), which explicitly stated that the startling event sustaining admission of a victim's outburst in response to a photograph of an alleged assailant was viewing the photograph, not the assault itself). Chapin clearly focuses the "startling event or occurrence" inquiry on whether some event startled the declarant, rather than on whether there is proof that the specific event giving rise to the action is the event that elicited the declarant's statement.
¶ 26 The plain language of ER 803(a)(2) does not expressly specify a minimum quantum of evidence necessary to substantiate the occurrence of a startling event or condition. By contrast, two other hearsay exceptions, ER 804(b)(3) and Washington's child hearsay exception, RCW 9A.44.120, explicitly condition admissibility on the presence of evidence corroborating the declarant's statement. Examining what this court has deemed sufficient to satisfy explicit requirements for corroborating evidence in these other hearsay exceptions can inform our consideration of what is sufficient to satisfy the implied requirement of the excited utterance exception.
¶ 27 The first, ER 804(b)(3), provides that in a criminal case a statement against the declarant's interest is "not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." For purposes of ER 804(b)(3), courts assess the adequacy of corroborating circumstances by evaluating nine factors. State v. McDonald, 138 Wash.2d 680, 694, 981 P.2d 443 (1999). Five factors focus on the declarant (apparent motive to lie, character, personal knowledge of other crime participants, likelihood of faulty recollection, and likelihood of misrepresentation). Three factors focus on the context of the statement (spontaneity, timing, and relationship between declarant and witness, and presence of more than one witness). Only one factorwhether the statement contains an express assertion of past factsinvolves any consideration of the statement's consistency with other independently ascertainable facts. There is no requirement that the past facts be material to the criminal action for which the proponent seeks to admit the statement or that independent evidence corroborating the facts even be introduced. Clearly, this explicit requirement to corroborate a hearsay statement's trustworthiness is satisfied with circumstantial evidence focused on the declarant and the context of the statement, without independent proof of the criminal act alleged.
¶ 28 The second exception, Washington's child hearsay exception, dictates that when the child declarant is unavailable as a witness, a statement "may be admitted only if there is corroborative evidence of the act."[6] RCW 9A.44.120(2)(b). This court has *975 held that the child hearsay exception's explicit requirement for corroborative evidence of the act can be satisfied through indirect evidence. State v. Swan, 114 Wash.2d 613, 623, 790 P.2d 610 (1990). Moreover, we have found indirect evidence "stemming from the words and behavior" of two children sufficient corroboration of alleged abuse to render each child's statements admissible. Id. at 641, 790 P.2d 610. Notably, this explicit requirement for corroboration of the alleged act can be satisfied by indirect evidence produced from observation of the declarant's behavior and the context of the statement.
¶ 29 Logically, the merely implied requirement in ER 803(a)(2) to substantiate a startling event or condition would be no more exacting than the explicit requirements imposed in ER 804(b)(3) and the child hearsay exception. Therefore, since indirect evidence derived from the declarant's behavior and the statement's context satisfy explicit requirements for corroboration, a similar quantum of evidence could reasonably be expected to satisfy the implied requirement to corroborate a startling event or condition in ER 803(a)(2).
¶ 30 Focusing the startling event or occurrence inquiry on whether some event startled the declarant and corroborating that event through circumstantial evidence, such as the declarant's behavior and the statement's context, is entirely consistent with the theory supporting admission of excited utterances. An excited utterance derives its reliability mainly from the heightened emotional state of the declarant as a result of the startling event, not from the event itself. "The theory of [Fed.R.Evid. 803(2)] is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication."[7] Fed. R.Evid. 803(2) advisory committee's note. This court has previously recognized that, "[f]or purposes of the excited utterance exception, . . . it is the event's effect on the declarant that must be focused upon." Chapin, 118 Wash.2d at 687, 826 P.2d 194 (citing State v. Carlson, 311 Or. 201, 216, 808 P.2d 1002 (1991)).
¶ 31 Young's rule would require the proponent of excited utterance evidence to proffer independent corroborating proof that a startling event occurred simply to put one piece of evidence-the excited utterance-before the trier of fact.[8] Such a requirement not only overemphasizes the role that the startling event plays in lending an excited utterance its reliability, it reflects a misunderstanding of the trial court's role. The determination that excited utterances are reliable enough to be admissible is not intended to, and does not, establish that the underlying crime occurred, it merely permits the admitted statements to be considered in conjunction with the other evidence presented at trial. Imposing an independent corroborative proof requirement confuses the admissibility of evidence with the weight to be given to that evidence, which is properly a determination for the trier of fact. By holding that the statement alone is insufficient to corroborate the occurrence of a startling event but that circumstantial evidence, independent from bare words, can corroborate that a startling event occurred, we maintain the integrity of the excited utterance exception and respect the philosophy underlying the rules of evidence to promote the discovery of truth by admitting all relevant evidence. ER 102.
¶ 32 Our holding falls comfortably within the guidance provided by evidence law treatises on the issue of how the proponent of excited utterance evidence may corroborate that a startling event occurred. Scholars not only acknowledge that "the statement itself . . . certainly can be considered" but assert that the generally prevailing practice is to consider the statement itself sufficient proof of the exciting event. 2 McCORMICK ON EVIDENCE § 272, at 256-57 (Kenneth S. Broun ed., 6th ed.2006); see also 5 JACK B. WEINSTEIN & MARGARET A. BERGER, *976 WEINSTEIN'S FEDERAL EVIDENCE § 803.04[2][a] (Joseph M. McLaughlin ed., 2d ed.1999). The statement of American law provided by Corpus Juris Secundum, although it rejects using the hearsay statement alone to prove the exciting event,[9] nevertheless acknowledges that "[d]irect proof . . . or proof that forecloses all speculation, is not required to satisfy the excited utterance exception to the hearsay rule." 31A C.J.S. EVIDENCE § 359, at 649 & n. 68.
¶ 33 Evidence scholars opine that not requiring independent proof of a startling event is in accord with the discretion the evidence rules give trial courts to determine the admissibility of excited utterances. Weinstein's Federal Evidence notes that even though using the hearsay statement itself to establish the occurrence of a startling event may be "somewhat unsettling theoretically," it is justified by the discretion granted to trial courts in Fed.R.Evid. 104(a). 5 WEINSTEIN & BERGER, supra, § 803.04[2][a]. Washington's equivalent rule, ER 104(a),[10] "allows the court to consider otherwise inadmissible evidence to determine the admissibility of evidence offered by one of the parties." City of Bellevue v. Hellenthal, 144 Wash.2d 425, 441, 28 P.3d 744 (2001).
¶ 34 We agree with Weinstein & Berger that allowing the hearsay statement, in and of itself, to establish the occurrence of a startling event is unsettling, and we decline to adopt such a rule. Concerns about "circularity" and "bootstrapping" likewise underlie the reasoning of the minority of jurisdictions that require the proponent of excited utterance evidence to produce independent corroborative proof of the startling event.[11] But the majority of jurisdictions have explicitly held that independent corroborative proof of the startling event is not required to admit excited utterance evidence.[12] Our rule, by requiring evidence independent from the bare words of the statement to corroborate that a startling event occurred, eliminates the "circularity" or "bootstrapping" problem. And any similar concerns that might arise from our holding are eliminated by ER 104(a).
¶ 35 No Washington case has previously reached the holding that we announce todaythat circumstantial evidence, independent from the bare words of a declarant's statement, can corroborate that a startling *977 event occurred for purposes of the excited utterance exception. However, one decision by our Court of Appeals merits brief discussion. In State v. Terry, 10 Wash.App. 874, 880, 520 P.2d 1397 (1974), the court stated that it would not "expand the excited utterance exception" to include a statement that "not only fails to relate to the main event . . . but also relates merely to an event which is not established except by the hearsay testimony itself." However, the Terry court made its pronouncement while this state's former common law res gestae hearsay exception was in effect. Id. This state subsequently adopted ER 803(a)(2), which does not include the requirement that the excited utterance relate to the "main event." Chapin, 118 Wash.2d at 688, 826 P.2d 194. The Terry court's statement is not relevant to the issue before us because it was made in relation to a requirement for a hearsay exception that no longer exists.
¶ 36 In summary, this court recognized in Chapin that the excited utterance exception requires simply that some event have startled the declarant. The plain language of the exception does not specify a minimum quantum of evidence necessary to corroborate that event, but this court has held that circumstantial evidence derived from a declarant's behavior and the statement's context are sufficient to satisfy explicit requirements for corroboration found in other hearsay exceptions. Finding such evidence sufficient accords with the theory that excited utterances are reliable because circumstances produce a condition of excitement that temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. Evidence law treatises and the majority of jurisdictions have concluded that the declarant's statement itself is therefore sufficient proof that a startling event occurred. In light of these considerations, we hold that although a declarant's statement alone is insufficient to corroborate the occurrence of a startling event, circumstantial evidence, independent from the statement's bare words, can sufficiently corroborate a startling event or occurrence to satisfy the first element of the excited utterance exception.
¶ 37 Applying the rule above, we hold that the record in this case does not support a determination that the trial court abused its discretion in admitting K.L.'s statements as excited utterances. This case, like many child molestation cases, does include a "he said, she said" component.[13] Additionally, although the child witness subsequently recanted her molestation allegations, that is also not unusual, as children frequently recant allegations against family members.[14] Because K.L. testified at trial and recanted her allegations, this case does not present the concern of a hearsay declarant who is unavailable for purposes of cross-examination. Not only was K.L. available for trial, she was a defense witness who testified that she lied when she accused Young of attempted molestation. As a result, the only issue in this case is whether K.L.'s previous statements to three separate *978 individuals were reliable enough to be admitted as excited utterances for the jury to consider in combination with her subsequent recantation testimony at trial.[15]
¶ 38 The trial court conducted a lengthy pretrial hearing, in which testimony was heard from the witnesses to K.L.'s statements, Johnson, Barnes, and Lomax, as well as K.L. and her mother. The witnesses' testimony included assessments of K.L.'s appearance, behavior, and condition while making her statements. Johnson's and Barnes' evaluations were informed by their personal relationships with K.L., relationships formed over multiple years, which they described in familial terms. This testimony provided independent appraisals of K.L. made by people who knew her well and deemed her to be credible. The judge assessed the witnesses during the hearing, both for their own credibility and their reliability in evaluating K.L. The hearing testimony also introduced the facts that K.L. came directly to the witnesses' house from her home across the street, which was about 10 seconds away, and that only K.L. and her younger brother were home with Young that afternoon.
¶ 39 Based on this evidence, the trial court determined that K.L.'s statements were admissible as excited utterances. Concluding that K.L.'s statements were "emotionally laden" and "authentic at the time," the court stated:
[I]t seems to me the function of this hearsay exception is not for the Court to decide the person's guilt or innocence as a basis to determine the admissibility of an excited utterance, but simply whether the surrounding circumstances and the events and what you're seeing preponderates on behalf of it being an excited utterance. I think this was an excited utterance. I do not find it credible that this 11-year-old child was under the circumstances so artful that she created a false impression in the part of all of these people, who were not people that were unknown to her.
3 RP at 167-68.
¶ 40 The admission of K.L.'s statements as excited utterances on the basis of only the evidence that the trial court considered at the prehearing is admittedly a close question. However, the additional evidence presented at trial, which was available but not considered at the pretrial hearing, provides more than sufficient corroboration, independent of the bare words of K.L.'s statement. K.L. showed Barnes money she said Young gave her for cleaning. When Barnes asked Young what happened, after K.L. made her statements, Young said that he did not want any trouble and did not want Barnes to call the police. Barnes testified that he never said anything about calling the police. When Barnes and Lomax returned to Young's house a few minutes later, Young did not answer the door and Barnes and Lomax saw Young jumping over the back fence. Taken together, these circumstances provide ample circumstantial evidence, independent of the bare words of K.L.'s statements, that a startling event had occurred. As a result, the trial court's admission of K.L.'s excited utterances on the basis of only the evidence considered during the pretrial hearing was not prejudicial.
C. Statement Content
¶ 41 Young finally argues that in addition to the three commonly recognized elements of the excited utterance exception, the proponent of excited utterance evidence must establish "what the statement actually was." Pet. for Review at 3. Young characterizes the *979 testimony of Johnson, Barnes, and Lomax regarding K.L.'s statements as inconsistent. Id. at 11, 826 P.2d 194. As a result, Young argues that the State failed to prove the content of the excited utterance statements, making them inadmissible. We disagree.
¶ 42 There is no authority to support the proposition that the proponent of excited utterance evidence must prove the exact content of an excited utterance for the statement to be admissible. As the Court of Appeals noted in the unpublished portion of its opinion, the trier of fact should resolve conflicting testimony and evaluate the credibility of witnesses. State v. Young, 123 Wash.App. 854, 99 P.3d 1244, 2004 WL 2429452, *6 (Wash.2004) (citing State v. Walton, 64 Wash.App. 410, 415-16, 824 P.2d 533 (1992)). The accounts of K.L.'s statements given by Johnson, Barnes, and Lomax were extremely similar and nothing in the record indicates that the trial court abused its discretion in admitting the three statements despite small discrepancies. If anything, those discrepancies would affect the weight the jury should give the evidence, rather than its admissibility. Therefore, we hold that the trial court did not abuse its discretion by admitting the hearsay statements despite inconsistencies in the witnesses' testimony about the content of the statements.

V. CONCLUSION
¶ 43 The trial court did not abuse its discretion by admitting as excited utterances statements that the alleged victim later recanted. A trial court may weigh the credibility of a declarant's recantation against the evidence that a statement is reliable because it was made spontaneously while under the influence of a startling event and determine that the statement is admissible as an excited utterance. The trial court did not abuse its discretion in admitting statements as excited utterances where there was no independent corroborating proof of the startling event. Although a declarant's statement alone is insufficient to corroborate the occurrence of a startling event, circumstantial evidence, independent from the statement's bare words, can sufficiently corroborate a startling event or occurrence to satisfy the first element of the excited utterance exception. Finally, the trial court did not err by failing to determine the exact content of the statements before admitting them as excited utterance evidence. Therefore, we hold that the trial court did not abuse its discretion by admitting the excited utterances in this case and affirm the Court of Appeals.
WE CONCUR: TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, and BOBBE J. BRIDGE, JJ.
ALEXANDER, C.J. (concurring in result).
¶ 44 I agree with the result the majority reaches in this case. I write separately in order to express my disagreement with the majority's determination that sufficient evidence was presented at the pretrial hearing to justify admission of K.L.'s statements to Anne Johnson, Jason Barnes, and Perry Lomax as excited utterances. In my view, the State failed to produce sufficient independent corroboration of the startling event that led to K.L.'s excitement. The evidence, even viewed most favorably to the State, only demonstrates that K.L. appeared to be scared, upset, and in a heightened emotional state when she made the statements the State sought to introduce. Although the majority concedes that the bare words of the utterance do not corroborate the occurrence of a startling event, it concludes that evidence of the speaker's excitement when the utterance is made is circumstantial evidence that corroborates the underlying startling event. Majority at 973. I disagree, being of the opinion that such behavior indicates only excitement and does not tend to corroborate the cause of the excitement.
¶ 45 I reach the same result as the majority, however, because in my judgment the trial court's error was rendered harmless by the unchallenged presentation of additional evidence, at trial, which did corroborate the startling event.
MADSEN, J. (concurring).
¶ 46 I agree with the dissent that a hearsay statement may not be admitted as an excited utterance without independent evidence of the startling event that caused the *980 declarant's excited reaction. However, I agree with the majority that other, independent evidence was available. In my view the error in this case occurred when the trial court expressly refused the State's attempt to introduce such evidence during the pretrial hearing. That error was corrected, however, when the corroborating evidence was presented at trial. Accordingly, I would affirm Henry Young's conviction.
SANDERS, J. (dissenting).
¶ 47 The majority holds excited utterances are admissible hearsay, even when recanted by the person who made them and no independent evidence corroborates their validity. I disagree. For an excited utterance to be admissible we must be assured it was uttered during actual excitement. Furthermore, admitting these statements is not harmless error. Henry Young's conviction and sentence should be reversed.
¶ 48 K.L., an 11-year-old girl, accused Henry Young of attempting to molest her. One day she ran out of her house, crying hysterically, and "confided" in a neighbor that Young tried to inappropriately touch her. K.L. later admitted she made it all up. Apparently, she was upset Young was dating her motherK.L.'s mother, Kayla, and Young married soon after the alleged incident. Despite being hearsay, despite being recanted, and despite a lack of independent corroboration, the statements are allowed by the majority to come in, condemning Young to life in prison without possibility of parole.
¶ 49 Hearsay is any out-of-court statement offered as "evidence to prove the truth of the matter asserted." ER 801(c). Our judicial system prefers testimony to be "live," so the jury can deduce the truthfulness of the person making the statement, both by watching the witness respond and being privy to his cross-examination. Hearsay is unreliable because the jury does not get to witness the original making of the statement.[1] But under certain circumstances, we allow for exceptions to the hearsay rule. An excited utterance is one such exception. ER 803(a)(1) provides, "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." The assumption underlying the excited utterance rule is some events are so startling, so shocking they produce "`a stress of nervous excitement . . . which stills the reflective faculties. . . . [and results in] a spontaneous and sincere response'" not yet altered by reflection or self-interest. State v. Chapin, 118 Wash.2d 681, 686, 826 P.2d 194 (1992) (quoting 6 JOHN HENRY WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1747, at 195 (James H. Chadbourn rev. ed.1976)).[2]
¶ 50 Here we do not know if there even was a startling event. This belies the very foundation of the excited utterance exception. If there was no startling event, there was no shock or stress to "`still[] the reflective faculties'" and no "`spontaneous and sincere response.'" Id. at 686, 826 P.2d 194; see *981 majority at 981 ("An excited utterance derives its reliability mainly from the heightened emotional state of the declarant as a result of the startling event, not from the event itself."). Ignoring the fact K.L. later said she was lying, all the trial court relied on was K.L.'s hearsay statement. The majority purports to say words are not enough by themselves but when combined with independent circumstantial evidence, the statement may be corroborated. Majority at 973. This circumstantial evidence includes K.L.'s "behavior, appearance, and condition." Id. at 973. In other words, how she made the statement as well as what she said must be considered. Specifically, the majority relies on the trial court finding that these statements were "`emotionally laden.'" Id. at 978 (citing 3 Verbatim Report of Proceedings (RP) at 167-68).
¶ 51 But K.L.'s histrionics are not "independent" evidence. Relying on how she made the statement is no more corroborative than the bare words themselves. K.L. later admitted her performance was just thata performance. If she is capable of falsifying what she said, then she is capable of falsifying how she said it. The majority's rule amounts to this: bare words are insufficient, but hysterical words are enough. Practically, this allows the very infirmity the majority laments. Because there will rarely be an "excited utterance" one doesn't utter excitedly, a trial court may now allow hearsay testimonystatements regarded as inherently untrustworthybased on only the unreliable hearsay statement itself.
¶ 52 Chief Justice Alexander concurs it was error for the trial court to admit K.L.'s statements, but nevertheless claims the majority was right to affirm Young's conviction because the error was harmless. Concurrence at 979. However, we cannot predict what the result would have been absent K.L.'s inadmissible hearsay. Indeed, if we had to guess as to one particular resultand guessing is as good as we can ever dothe better money would be on the jury finding Young not guilty. As the trial judge said, without K.L.'s hearsay statements, the State "would be out of business, pretty much." 1 RP at 169.
¶ 53 An error is not harmless unless it was an "error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case." State v. Britton, 27 Wash.2d 336, 341, 178 P.2d 341 (1947). Admitting these statements was prejudicial because it significantly affected the evidence before the jury. We cannot excuse an error resulting in the admission of unreliable hearsay evidence that goes to the very heart of the matter in controversy. "[I]t is impossible for courts to contemplate the probabilities any evidence may have upon the minds of the jurors." State v. Robinson, 24 Wash.2d 909, 917, 167 P.2d 986 (1946). So too it is impossible for this court to contemplate the probabilities the absence of evidence may have upon the minds of the jurors. The assumption a court "can determine what evidence or instruction influenced the jury's decision" is "a tacit admission that an appellate court is necessarily engaging in fact-finding." DENNIS J. SWEENEY, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277, 279 (1995-96).
¶ 54 While acknowledging this is a "close question," the majority claims later-considered evidence corroborates K.L.'s veracity and therefore any possible error in admitting her statements was not "prejudicial." Majority at 978. Never before has this court applied harmless error analysis so broadly. The majority cites no authority that allows a trial judge to correct a past error with future evidence.
¶ 55 Evidence is either admissible or it is not. Here it was not. Hearsay cannot be corroborated by the statement itself. And because these statements were relevant to deciding the issue before the jury, the error was prejudicial.
¶ 56 I dissent.
I CONCUR: JAMES M. JOHNSON, Justice.
NOTES
[1] We use the numbering system adopted by the parties for the Report of Proceedings. The volume entitled Volume I of III is cited as 3 RP and the volume entitled Volume III of III, Part 1 of 2 is cited as 5 RP.
[2] Young and Kayla were married on July 21, 2002, while Young was incarcerated in this case. After marriage, Kayla changed her last name to Young. To avoid confusion related to her name change, this opinion refers to her by her first name.
[3] The testimony in this opinion is drawn primarily from that given at the pretrial evidentiary hearing. Based on the pretrial testimony, the trial judge admitted K.L.'s statements as excited utterances. Citations to 3 RP at 61-108 and 135-72 are to the pretrial hearing. Testimony that the trial judge declined to hear at the pretrial hearing but which was admitted later at trial is cited in 5 RP at 318-749.
[4] At trial Barnes testified that he wanted to make sure K.L. understood the difference between "bad touching" and "good touching." 5 RP at 456. Barnes said that K.L. reaffirmed her story and said that she "`wouldn't lie'" to him. 5 RP at 457.
[5] The trial testimony of Johnson, Barnes, and Lomax was substantively consistent with the pretrial testimony described in the facts section of this opinion.
[6] RCW 9A.44.120 provides:

A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, describing any attempted act of sexual contact with or on the child by another, or describing any act of physical abuse of the child by another that results in substantial bodily harm as defined by RCW 9A.04.110, not otherwise admissible by statute or court rule, is admissible in evidence in dependency proceedings under Title 13 RCW and criminal proceedings, including juvenile offense adjudications, in the courts of the state of Washington if:
(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and
(2) The child either:
(a) Testifies at the proceedings; or
(b) Is unavailable as a witness: PROVIDED, That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
[7] The language of Fed.R.Evid. 803(2) is identical to ER 803(a)(2).
[8] In this case Young's rule would require the State to have produced evidence, independent of the circumstances and context surrounding K.L.'s statements, that established that the alleged molestation occurred simply to permit the jury to consider K.L.'s statements at trial in addition to her recantation and the other evidence.
[9] As support for its statement that "[t]here must be independent proof of the occurrence to which the statements relate, since the statements themselves cannot be used to prove the exciting event," C.J.S. cites cases from the two jurisdictions, Michigan and Texas, that have taken the most conservative approach to the admissibility of excited utterances. 31A C.J.S. EVIDENCE § 359, at 649 & n. 66.
[10] Washington's ER 104(a) is based on Fed. R.Evid. 104(a) and provides that in making preliminary determinations about the admissibility of evidence, a trial court "is not bound by the Rules of Evidence except those with respect to privileges." ER 104(a).
[11] For example, the Supreme Court of Michigan reasoned that:

It is the presence of a startling event that lends the utterance emanating therefrom its special reliability. Care must be taken to ensure that this principle is not reversed, that is, the excited utterance must not be used to substantiate the event from which the utterance must be shown to have arisen.
People v. Burton, 433 Mich. 268, 445 N.W.2d 133, 144 (1989).
Other jurisdictions holding that admission of excited utterances requires independent corroborative proof of the startling event include, People v. Leonard, 80 Ill.App.3d 741, 400 N.E.2d 568, 573, 36 Ill.Dec. 148 (1980); Truck Ins. Exch. v. Michling, 6 Tex. Sup.Ct. J. 238, 364 S.W.2d 172, 175 (1963); and State v. Post, 901 S.W.2d 231, 234-35 (Mo.App.1995).
[12] For example, the United States Court of Appeals for the Seventh Circuit has held that "[t]he appearance, behavior and condition of the declarant may establish that a startling event occurred. . . . Further, the declaration itself may establish that a startling event occurred." United States v. Moore, 791 F.2d 566, 570-71 (7th Cir.1986) (citations omitted).

Other jurisdictions holding that the proponent of excited utterance evidence need not offer independent proof that the startling event occurred include, United States v. Brown, 254 F.3d 454, 459-60 (3d Cir.2001); Wetherbee v. Safety Cas. Co., 219 F.2d 274, 277-78 (5th Cir.1955); Wheeler v. United States, 93 U.S.App. D.C. 159, 211 F.2d 19, 24 (1953); State v. Smith, 178 W.Va. 104, 358 S.E.2d 188, 194-95 (1987); People v. Franklin, 683 P.2d 775, 781-82 (Colo.1984); Johnston v. W.S. Nott Co., 183 Minn. 309, 236 N.W. 466, 467 (1931); and Commonwealth v. Alvarado, 36 Mass.App.Ct. 604, 634 N.E.2d 132, 133 (1994).
[13] As the United States Supreme Court noted in the context of a child rape case, "[c]hild abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim." Pennsylvania v. Ritchie, 480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Additionally, child sexual abuse cases frequently lack physical evidence. Clay Edwards, Note: The Reliability of Out-of-Court Statements by Child Victims of Sexual Abuse: Evaluating Consistency Via the Process of Disclosure, 33 U. LOUISVILLE J. FAM. L. 685, 687 (1995); see also Swan, 114 Wash.2d at 623, 790 P.2d 610 ("In most cases of child sexual abuse, however, there is no direct physical or testimonial evidence. The child victim is often the only eyewitness to the crime, and physical corroboration is rare because the sex offenses committed against children tend to be nonviolent offenses such as petting, exhibitionism, fondling and oral copulation.") (footnote omitted). Logically, these difficulties are even more pronounced in the context of an attempted molestation charge.
[14] Recantation is common in cases of intrafamily abuse, particularly "if the child witnesses extensive damage wreaked upon her family as a result of her revelation." Dara Loren Steele, Note, Expert Testimony: Seeking an Appropriate Admissibility Standard for Behavioral Science in Child Sexual Abuse Prosecutions, 48 DUKE L.J. 933, 939 (1999). In this case, K.L.'s mother married Young while he was incarcerated and awaiting trial as a result of K.L.'s molestation allegations. K.L. first recanted her allegations in a letter to Young, which was witnessed by her mother and was written after Young became her stepfather.
[15] The dissent adopts Young's reactionary argument that, based solely on K.L.'s excited utterances, Young was sentenced to "life in prison without possibility of parole." See dissent at 980. Not only is this argument patently false, it reflects a basic mistrust of our jury system. Young received a life sentence because his conviction in this case, in combination with his prior rape conviction, qualified him as a persistent offender. Additionally, the jury in this case did not base its decision purely on K.L.'s excited utterances. The jury heard all of the evidence in this case, including K.L.'s testimony at trial that she lied when she stated that Young touched her inappropriately. The trial court need not determine which of K.L.'s statements were true and which were false before making the decision to admit the evidence. To do so would usurp the role of the jury. The trial court appropriately determined that both the excited utterances and the recantation were admissible and that the jury should decide the case based on all of the evidence.
[1] The hearsay rule considers the potential harmful effect of unreliable evidence on a jury's decision making. These facts illustrate why a mistrust of this evidence is well founded. The rule against hearsay is one that dates back centuries to English common law. White v. Illinois, 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (finding the excited utterance exception itself may date back to the 17th century). We should respect the hearsay doctrine, a fundamental precept of our rules of evidence, and allow an "excited utterance" only in accordance with the rule: when the evidence has independent corroboration to authenticate it.
[2] A wealth of authority supports the requirement of independent proof of the startling occurrence. "There must be independent proof of the occurrence to which the statements relate, since the statements themselves cannot be used to prove the exciting event. . . . [I]t is incumbent upon the party seeking its admission to persuasively and convincingly demonstrate by the use of other corroborating evidence that the declarant actually viewed the event of which he speaks." 31A C.J.S. Evidence § 359, at 649 (1996) (emphasis added) (footnote omitted). See also Brown v. United States, 80 U.S.App. D.C. 270, 152 F.2d 138, 140 (1945); People v. Leonard, 83 Ill.2d 411, 415 N.E.2d 358, 47 Ill.Dec. 353 (1980); People v. Burton, 433 Mich. 268, 445 N.W.2d 133, 144 (1989); State v. Post, 901 S.W.2d 231, 235 (Mo. Ct.App.1995); Commonwealth v. Barnes, 310 Pa.Super. 480, 456 A.2d 1037, 1040 (1983); Truck Ins. Exch. v. Michling, 364 S.W.2d 172 (Tex.1963).