IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DANIEL NEIL BUSH, | ) | No. 78478-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THE STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | FILED: November 4, 2019 |

HAZELRIGG-HERNANDEZ, J. — Daniel Neil Bush asserts for the first time on appeal that the admission at trial of statements from a 911 call that he was "strangling" a woman constituted manifest constitutional error. He claims that this was improper opinion testimony, as he was accused of assault in the second degree by strangulation, and that trial counsel was ineffective for failing to object on those specific grounds. Because Bush failed to establish that admission of the 911 call constituted manifest constitutional error or that the decision not to object on this particular basis was deficient performance by his attorney, we affirm.

FACTS

Daniel N. Bush was accused of committing assault in the second degree, by way of strangulation, against his girlfriend, Kathstacie L. Dickson, in front of the Ganja Goddess in Seattle. Bush was also accused of committing assault in the fourth degree against David M. Carthon, an individual who tried to intervene. A

Ganja Goddess security guard, Zane P. Gibson, allegedly called 911 and reported a white male "strangling" a black female and that the female had fallen down and hit her head on the sidewalk. Carthon attempted to intervene to help Dickson when Bush allegedly threw a beer can and swung at Carthon. Officers arrived and Bush was taken into custody for assault. Officers testified that both Bush and Dickson appeared intoxicated. Dickson refused medical treatment and officers only observed a minor cut on her back and a bump on the back of her head. A recording from Ganja Goddess surveillance video acquired by police showed the incident between Bush and Dickson outside the store, but only from their shoulders down.

The state intended to introduce Gibson's 911 call, but Gibson was not expected to testify at trial. The call recorded the following exchange:

> VOICE: 911, what is your emergency?
> VOICE: Yes, I'm outside of Ganja Goddess, 3207 South First Avenue in Seattle, Washington, and I just watched a large white gentleman strangle a black lady—
> VOICE: Okay, and you said (inaudible) verify One Avenue South, and it's outside in front?
> VOICE: Yes, ma'am.
> VOICE: Okay (inaudible.) Where's the man right now?
> VOICE: He's still out here.
> VOICE: Okay, stay on the line. We're going to get the medics on with us. Any weapons involved, like a gun or a knife?
> VOICE: (Inaudible) what was that?
> VOICE: Any weapons involved like a gun or a knife?
> VOICE: No (inaudible) he was just holding her throat and then she fell down and her skull hit the sidewalk really hard.
> VOICE: Okay. Thank you, sir. 3207 One Avenue South.
> VOICE: 3207 First South?
> VOICE: Correct, outside of (inaudible) a white male strangled a black female, suspect still there, female down on the ground. We're—we have a call in.
> VOICE: He's got a beer with him. I don't know if that's important or not, but—
> VOICE: (Inaudible).

VOICE: Sir, you just want us to just call you back when the scene is secure?

VOICE: Yeah (inaudible).

VOICE: Okay, thank you. Well, what the—the white male—how old does he appear?

VOICE: I'd say 50 to 60, if not (inaudible).

VOICE: What color shirt or jacket is he wearing?

VOICE: He's wearing a white tank top, red shorts, kind of cargo, no underwear on. He's now—he's picking her up now.

VOICE: Okay. Is she pretty limp?

VOICE: He's got a Target bag.

VOICE: Is—

VOICE: No, she's trying to—she's rubbing her head. She's able to stand.

VOICE: Okay. All right. The female—how old does she appear?

VOICE: The same. Probably 50's.

VOICE: What color shirt or jacket—

VOICE: She's a lot shorter than him. She's—she's in a dress. It's kind of like black, white, and blue paint splattered all over, just kind of, you know like some sort of design (inaudible) they're in front of a yellow van.

VOICE: Okay.

VOICE: Oh, he's trying to take off and she doesn't want to.

VOICE: He's trying to get in a yellow van?

VOICE: No, he's—they don't have a vehicle. (Inaudible) yellow van. But he's like grabbing her arm and trying to pull her away.

VOICE: Okay.

VOICE: They're taking off now.

VOICE: Which way are they going?

VOICE: They're walking towards Spokane Street. What's that intersection right there? They're walking towards First and Horton.

VOICE: First and Horton? Okay. Is she willingly walking with him now? Or is he—are they yelling at each other?

VOICE: No, she—well, he's like forcing her to. He was just grabbing her arm, then he let go, and they're still walking together.

VOICE: Okay.

VOICE: But he's like yelling at her face.

VOICE: Okay. Is he still pulling her?

VOICE: No, right now they're just walking—

VOICE: Okay.

VOICE: — (Inaudible).

VOICE: What is your name?

VOICE: My name is Zane. I'm the security guard for the store.

VOICE: Spell your first name, please.
VOICE: Z-a-n-e
VOICE: And your last name?
VOICE: Gibson, G-i-b, as in boy, s-o-n.
VOICE: And this is a good number for you . . . ?
VOICE: Yes, ma'am.
VOICE: Okay. Police are going to be out there as soon as they're available. If anything changes or escalates any further before they get there, call us back immediately.
VOICE: Yes, ma'am.
VOICE: Thank you. Bye-bye.

In a pretrial motion, Bush objected to the admission of the recording arguing that it was testimonial in nature thereby violating his right to confrontation, that it could not be properly authenticated, and that the implications of admitting such evidence incentivizes the state to not call witnesses to insulate the caller from cross-examination. The judge ruled the statements were non-testimonial and that they would be allowed into evidence as hearsay exceptions based on both present-sense impression and excited utterance. Bush did not object based on improper opinion testimony as to the caller's statement that the male "strangled" the female in either his written motion or in oral argument at the motion hearing.

At trial the prosecution called police officers, a firefighter, and the former general manager of Ganja Goddess to testify; none of whom had witnessed the incident. The court admitted the 911 call and surveillance video into evidence. A registered nurse testified as an expert for the state regarding strangulation and its physiological effects generally. Neither Dickson nor Carthon testified. The state's closing argument relied heavily upon Gibson's statements in the 911 call as he witnessed the incident. The jury convicted Bush of assault in the second degree, domestic violence as to Dickson and acquitted him of the misdemeanor charge of

- 4 -

assault in the fourth degree as to Carthon. Bush timely appeals his case, arguing that the admission of the 911 call denied him of his right to an independent determination of the facts by the jury and that his lawyer was ineffective by failing to object to the admission of improper opinion testimony as to his guilt.

## DISCUSSION

### I.  Opinion testimony

Generally this court may not consider issues raised for the first time on appeal. RAP 2.5(a).  However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). Impermissible opinion testimony regarding the defendant's guilt may be reversible error as admission of such testimony violates the defendant's constitutional right to a jury trial, which includes independent determination of the facts by the jury. State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

Impermissible opinion testimony as to the guilt of a defendant is unfairly prejudicial as the testimony "invad[es] the exclusive province of the finder of fact." State v. Black 109 Wn.2d 336, 348, 745 P.2d 12 (1987).  We review the trial court's decision whether to admit or exclude evidence for abuse of discretion; the burden is on the appellant to establish such abuse. State v. Demery, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).  Where reasonable minds could differ regarding the propriety of the trial court's actions no abuse of discretion has occurred. State v. Sutherland, 3 Wn. App. 20, 21—2, 472 P.2d 584 (1970).

"The trial court must be accorded broad discretion to determine the admissibility of ultimate issue testimony." City of Seattle v. Heatley, 70 Wn. App.

573, 579, 854 P.2d 658 (1993). However, prior to determining whether the statements were improper opinion testimony we must examine whether the statements were testimony at all. Demery, 144 Wn.2d. at 760. In Demery, the Supreme Court examined whether an officer's statements during a taped interview were improper opinion testimony. Id. at 758. The court's analysis indicated that opinion testimony requires that the opinion be provided as testimony from a witness, which would occur by an individual providing evidence under oath or affirmation. Id. at 759-60. The court rejected the claim that the officer's statements in a video interview challenging the defendant's veracity were testimony. Id. at 760. The Demery court relied on the facts that the officer's statements were not live, but made during a recorded interview, and that the statements by the officer were not comments on the credibility of the defendant, but rather a commonly used technique during interrogation. Id.

In the present case, Bush brought a pretrial motion to exclude the 911 call on a number of grounds, but oral argument focused mainly on the assertion that admission of the call violated Bush's confrontation right. The trial court ruled that the statements by Gibson were non-testimonial in nature and were made "in order to get help." The court admitted the statements as excited utterances and present sense impressions of Gibson. Bush does not assign error to the trial court's ruling on his motion to exclude the 911 call as a violation of the confrontation clause. As such, we decline to explore that issue.

Furthermore, it is logically and practically unreasonable to treat the challenged statements as non-testimonial for the analysis of a constitutionally

protected right, but to then consider the same statements testimony for purposes of reviewing a later evidentiary ruling. The trial court's finding that Gibson's statements were non-testimonial strongly suggests that they cannot then constitute improper opinion testimony under Demery. A trial court abuses its discretion if it improperly applies an evidence rule. State v. Young, 160 Wn.2d 799, 806, 161 P.3d 967 (2007). In the pretrial motion hearing, the parties argued several defense challenges to the admissibility of the 911 call and the court carefully considered each of them in turn, reviewing both the call and the surveillance footage. The trial court did not abuse its discretion in admitting Gibson's statements in the 911 call.

Even if we determined that the statements were testimony and that they were improperly admitted, Bush has not proven that the admission resulted in prejudice to his right to a jury trial by taking the independent determinations of facts away from the jury. "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." Kirkman, 159 Wn.2d at 935. At trial, the jury was instructed as to the legal requirements of "strangulation" in Instruction No. 12. The State presented testimony from registered nurse Teresa Stewart as to methods of strangulation as well as an explanation of what occurs physiologically during and after strangulation.

Additionally, the surveillance video from Ganja Goddess was played for the jurors. The video did not show Bush or Dickson above their shoulders. However, officers testified that the clothing on the persons in the video matched that observed on Bush and Dickson when law enforcement arrived on the scene.

Jurors were instructed that they do not have to accept opinions of witnesses, that they get to weigh credibility, and that they are the sole judges of credibility. "Jurors are presumed to follow the court's instructions." Id. at 937. In a similar inquiry regarding opinion testimony, the Supreme Court warned, "[o]nly with the greatest reluctance and with clearest cause should judges—particularly those on appellate courts—consider second-guessing jury determinations or jury competence." Id. at 938. Even if we had determined that Gibson's 911 statements did constitute improper opinion testimony, Bush still failed to meet his burden of demonstrating manifest constitutional error under RAP 2.5(a)(3).

II.    Ineffective assistance of counsel

Bush also asserts that defense counsel was ineffective for failing to object to Gibson's statements in the 911 call on the specific grounds that they constituted improper opinion testimony. In a claim of ineffective assistance of counsel, the performance must have been deficient and the deficient performance must have resulted in prejudice. Strickland v. Wash., 466 U.S. 668, 669, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is considered deficient if "it [falls] below an objective standard of reasonableness based on consideration of all the circumstances." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). A showing of prejudice requires a reasonable probability that but for the deficient performance, the outcome of the proceeding would have been different. State v. Estes, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). "Courts engage in a strong presumption counsel's representation was effective." McFarland, 127 Wn.2d at 335.

Though counsel did not object to the admission of Gibson's statement in the 911 call on opinion grounds at trial, failing to object when a previous and thorough argument against the admissibility of the statements had been made, and rejected, does not demonstrate deficient performance. Defense argued against the admissibility based on confrontation and other grounds and the trial court was not persuaded. After counsel lost the motion, it was not an unreasonable strategy to avoid further argument against the admissibility. Further, counsel may have reasoned that if Gibson's statements were non-testimonial for confrontation clause purposes, as the trial court had ruled, they could not be challenged as opinion testimony. Bush fails to demonstrate that the failure to object on these particular grounds was deficient under these circumstances.

Affirmed.

WE CONCUR: