FILED

DEC. 26, 2013

In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 30732-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MARTINEZ, Jr., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Robert Martinez appeals his second degree rape, fourth degree assault, and unlawful imprisonment convictions and sentence. Mr. Martinez contends the trial court erred in admitting hearsay evidence and counting his prior second degree robbery conviction in California under Washington's Persistent Offender Accountability Act (POAA), chapter 9.94A RCW. Finding no error, we affirm.

FACTS

Mr. Martinez and P.H. started a relationship in 2003 and have three children. Mr. Martinez was incarcerated from the fall of 2008 until May 12, 2010. On May 14, P.H. hosted a barbeque for Mr. Martinez's birthday at her house. Mr. Martinez was intoxicated and upset with P.H. for not keeping in better contact with him while he was in jail. He left but returned to P.H.'s home later in the evening. Mr. Martinez wanted to have sex; P.H. did not. According to P.H., Mr. Martinez was angry and took her by the

hair and dragged her into the bedroom. She struggled as he ripped her clothes off. Mr. Martinez placed both hands around her neck in attempt to choke P.H. and then raped her anally.

P.H.'s friend, Amber Grimm, knocked on the door. P.H. wrapped herself in a blanket and answered the door. Ms. Grimm observed a bruise on P.H.'s forehead and red marks around her neck. P.H. appeared "very, very frantic." Report of Proceedings (RP) at 313. Ms. Grimm asked P.H. to step out on the porch with her to have a cigarette. After a few minutes, the women went inside and sat on the couch. P.H. then whispered to Ms. Grimm that Mr. Martinez just raped her. Mr. Martinez then approached the women and stated he "fucked up." RP at 260. He went into the kitchen and grabbed a knife and threatened to kill himself. Mr. Martinez finally left and P.H. went to the hospital.

P.H. told hospital personnel she had been raped. Clarkston Police Officer Jeremy Foss was dispatched to the hospital to investigate. When he walked into the hospital room, Officer Foss observed P.H. had multiple red marks and small scratches around her upper chest and on her throat area, a bruise with a bleeding scratch on her forehead, and some bruising on her arms. He also observed her sitting on a chair and "rocking back and forth. She was, you could definitely tell that she was excited or upset about something . . . ." RP at 220. P.H. reported Mr. Martinez had raped her anally approximately one and one-half to two hours prior.

2

The State charged Mr. Martinez with second degree rape, second degree assault, and unlawful imprisonment. The State filed a persistent offender notification, notifying Mr. Martinez that if convicted he would face a sentence of life without the possibility of parole.

Pretrial, after considering RCW 9A.44.020, the rape shield statute, the court barred "the admission of, or allusions to any prior consensual sexual activities involving the alleged victim . . . and any other person." Clerk's Papers at 209.

During trial, and over a defense objection, Ms. Grimm testified P.H. whispered to her that Mr. Martinez had raped her. The court allowed the hearsay testimony under the excited utterance exception.

Over a defense objection, Officer Foss was permitted to testify to P.H.'s statement at the hospital that Mr. Martinez raped her. In allowing the testimony, the court found, "[C]ertainly the first few minutes of the officer's colloquy with [P.H.], clearly her comments clearly fall under the excited utterance exception to the hearsay rule. Beyond the first few minutes of that conversation, though, I believe that it became as usual a routine, not routine, but [standard operating procedure] SOP type investigation in progress, so I will sustain the objection in part but overrule it in part." RP at 228. Hospital personnel testified, without objection, that P.H. reported she had been raped.

Dr. Michael Lin, a deoxyribonucleic acid (DNA) analyst testified that Mr. Martinez's DNA was found on P.H.'s anal swab extracts. And, Dr. Lin found DNA

3

matching Joe Villarreal but his evidence was excluded from the jury under the rape shield law.

Mr. Martinez testified the sex was consensual. The jury found Mr. Martinez guilty of second degree rape, fourth degree assault, and unlawful imprisonment. Because Mr. Martinez had a 1993 second degree robbery conviction from California and a 1999 first degree robbery conviction from Washington which was part of his criminal history, the court sentenced Mr. Martinez to life in prison without the possibility of early release under the POAA. Mr. Martinez appealed.

## ANALYSIS

### A. Evidence Rulings

The issue is whether the trial court erred in evidence rulings, first, admitting evidence under the excited utterance exception to the rule excluding hearsay and, second, excluding evidence under the rape shield statute. Mr. Martinez argues the testimony from Ms. Grimm and Officer Foss should have been disallowed and the DNA evidence concerning Mr. Villarreal's contact with P.H. should have been allowed in evidence.

We review evidentiary rulings for abuse of discretion. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). Substantial deference is given to the trial court's rulings. *State v. Wade*, 138 Wn.2d 460, 463-64, 979 P.2d 850 (1999). Mr. Martinez argues for a higher standard of review for evidence admitted under the excited utterance exception, but *State v. Briscoeray*, 95 Wn. App. 167, 171, 974 P.2d 912

4

(1999) makes clear the abuse of discretion standard is the correct standard for analyzing excited utterances. Discretion is abused if it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

First, although hearsay is generally inadmissible, ER 803(a)(2) provides that certain excited utterances may be admissible. *State v. Magers*, 164 Wn.2d 174, 187, 189 P.3d 126 (2008). A statement qualifies as an excited utterance if "(1) a startling event occurred, (2) the declarant made the statement while under the stress or excitement of the event, and (3) the statement relates to the event." *Id.* at 187-88.

The declarant must make the statement while still "under the influence of external physical shock" and without "time to calm down enough to make a calculated statement based on self-interest." *State v. Hardy*, 133 Wn.2d 701, 714, 946 P.2d 1175 (1997). The declarant must make the statement while so "'under the influence of the event . . . that [the] statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.'" *State v. Strauss*, 119 Wn.2d 401, 416, 832 P.2d 78 (1992) (second alteration in original) (quoting *Johnston v. Ohls*, 76 Wn.2d 398, 406, 457 P.2d 194 (1969)), *abrogated in part on other grounds, Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Courts generally consider (1) the amount of time between the event and when the declarant makes the statement and (2) the declarant's observable level of emotional stress when making the statement. *See, e.g., Strauss*, 119 Wn.2d 416-17.

5

Here, P.H. opened the door directly after the alleged rape occurred. She was wrapped in just a blanket. She appeared "very, very frantic" and with a bruise on her forehead and red marks around her neck. RP at 313. Within minutes of Ms. Grimm's arrival, P.H. whispered to her that Mr. Martinez just raped her. Because a starting event had just occurred and P.H. was still under the stress of the event, her statement regarding the event to Ms. Grimm was permissible hearsay under the excited utterance exception. The trial court had tenable grounds in admitting it.

Turning to P.H.'s statement to Officer Foss, Mr. Martinez argues the passage of time gave P.H. time to calm down and make a calculated statement to the officer. "The passage of time alone, however, is not dispositive." *Strauss*, 119 Wn.2d at 417. In *Strauss*, our Supreme Court held a rape victim was still under the influence of the incident when she made the statement even though more than three hours may have passed. *Id.* at 416-17. There, the victim appeared to be in a state of shock; the officer described the victim as "very distraught, very red in the face and crying." *Id.* at 416. Similarly, a statement made in a record that indicated a range of six to seven hours after an event can still be an excited utterance where the declarant is still under the stress of that event. *State v. Thomas*, 46 Wn. App. 280, 282, 284-85, 730 P.2d 117 (1986), *aff'd*, 110 Wn.2d 859, 757 P.2d 512 (1988); *State v. Flett*, 40 Wn. App. 277, 278-79, 287, 699 P.2d 774 (1985).

Officer Foss interviewed P.H. approximately one and one-half to two hours after the alleged rape. When he first approached her, she was sitting in a chair in a hospital

6

room. Officer Foss observed P.H. had multiple red marks and small scratches around her upper chest and on her throat area, a bruise with a bleeding scratch on her forehead, and some bruising on her arms. He observed her sitting on a chair and "rocking back and forth. She was, you could definitely tell that she was excited or upset about something . . . ." RP at 220. P.H. then reported that Mr. Martinez had raped her anally. Based on P.H.'s condition, P.H. was still under the influence of the incident when she made the statement even though one and one-half to two hours had passed. Since P.H. was still under the stress of the event, the court had tenable grounds to allow her hearsay statement to Officer Foss. P.H.'s rape allegations were made about the same time to hospital personnel, which were admitted without objection at trial. Even if P.H.'s statements to Officer Foss were partly testimonial the other admissible hearsay from Ms. Grimm and the hospital personnel hearsay was before the jury, lessening any prejudicial effect.

Given all, we conclude the trial court did not abuse its discretion in allowing the hearsay evidence under the excited utterance exception.

Second, the rape shield statute limits the ability of either party to introduce at trial evidence of the past sexual behavior of the complaining witness. RCW 9A.44.020(2). The exclusion "of evidence under the rape shield statute . . . 'is within the sound discretion of the trial court.'" *State v. Aquirre*, 168 Wn.2d 350, 363, 229 P.3d 669 (2010) (quoting *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983)).

7

Criminal defendants are guaranteed the right to confront and cross-examine adverse witnesses. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. The cross-examiner has traditionally been allowed to mount a general attack on the credibility of the witness or, more specifically, to reveal biases, prejudices, or ulterior motives of the witness. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, L. Ed. 2d 347 (1974). But a criminal defendant has no constitutional right to the admission of irrelevant evidence. *Hudlow*, 99 Wn.2d at 15.

Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. ER 401. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. ER 403. The trial court has wide discretion in balancing probative value versus prejudice. *State v. Stein*, 140 Wn. App. 43, 66, 165 P.3d 16 (2007).

Washington's rape shield statute provides, in relevant part, "Evidence of the victim's past sexual behavior . . . is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent." RCW 9A.44.020(2). "The purpose of the statute is to encourage rape victims to prosecute, and to eliminate prejudicial evidence of prior sexual conduct of a victim which often has little, if any, relevance on the issues for which it is usually offered, namely, credibility or consent." *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984).

8

The rape shield law applies here. P.H.'s prior sexual conduct (including evidence of Mr. Villarreal's DNA) was sought to show she consented to anal intercourse with Mr. Martinez on May 14, 2010. This is exactly the irrelevant evidence our legislature excluded in RCW 9A.44.020(2). The trial court's ruling excluding past sexual behavior came under RCW 9A.44.020(2). Moreover, Mr. Martinez cannot show prejudice. The trial court excluded all evidence relating to P.H.'s past sexual behavior. Nevertheless, during cross-examination, defense counsel asked P.H. if she had consensual intercourse with Mr. Martinez the night before the rape, in which she answered yes. Thus, evidence that P.H. consented previously was before the jury. Ultimately, credibility determinations were left for the jury to decide. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Based on the above, we conclude Mr. Martinez was not denied a fair trial based on evidentiary error.

## B. POAA Sentencing

The issue is whether the sentencing court erred in sentencing Mr. Martinez under the POAA. Mr. Martinez contends the POAA was enacted after his first strike conviction; therefore, it does not apply to him. He separately argues California's second degree robbery conviction is not comparable to Washington's second degree robbery conviction. Mr. Martinez, however, acknowledges this issue was recently decided against him in *Sublett*, 176 Wn.2d 58. There, the court held that the convictions in both states were comparable. *Id.* at 89. Mr. Martinez is correct, *Sublett* controls. We treat

9

Mr. Martinez's acknowledgement as a concession with the understanding he has made his concession in hopes of a change in the controlling case law.

Mr. Martinez argues the POAA violates the ex post facto clause of the United States and Washington Constitutions. Mr. Martinez reasons the POAA retroactively increases the punishment associated with his 1993-committed first strike crime.

The ex post facto clauses of the United States Constitution, article I, section 10, and the Washington Constitution, article I, section 23, prohibit the State from exacting any law that: (1) punishes an act that was not punishable at the time the act was committed, (2) aggravates a crime or makes the crime greater than it was when committed, (3) increases the punishment for an act after the act was committed, and (4) changes the rules of evidence to receive less or different testimony than required at the time the act was committed in order to convict the offender. *State v. Angehrn*, 90 Wn. App. 339, 343, 952 P.2d 195 (1998) (citing *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990)).

Washington courts have consistently rejected similar ex post facto arguments regarding the use of prior convictions in applying the POAA. *State v. Nordlund*, 113 Wn. App. 171, 192, 53 P.3d 520 (2002). The court rejected Mr. Martinez's argument in *Angehrn*, which addressed whether the POAA aggravates a crime or increases the punishment for a prior committed act. *Angehrn*, 90 Wn. App. at 343. The *Angehrn* court determined that the POAA's increased punishment is triggered only upon the third

10

conviction of a "most serious offense." *Id.* Consequently, the POAA "does not retroactively increase the penalty for prior offenses." *Id.* The court went on to conclude:

> In this case, POAA was passed in November 1993, well before [the defendant] committed the robberies that constituted his third most serious offense. As previously stated, POAA's increased punishment is triggered only upon the third conviction of a most serious offense. . . . As a result, [the defendant] had fair notice that he would be sentenced to life without the possibility of parole if convicted of a third most serious offense.

*Id.* at 344. The court held that the POAA's mandatory life sentence does not constitute ex post facto punishment when applied to cases, as here, where the act constituting the third strike occurs after the POAA's enactment. *Id.*

Here, using Mr. Martinez's prior convictions to determine the POAA's application did not increase the punishment for his prior strikes; rather, the prior strikes were used only to calculate his current sentence for his post-POAA convictions. Because Mr. Martinez committed the third strike well after the 1993 passage of the POAA, he had fair notice of the life sentence before he committed that third offense. Therefore, no ex post facto violation is established by Mr. Martinez.

11

No. 30732-8-III
*State v. Martinez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, J.

WE CONCUR:

Siddoway, A.C.J.

Fearing, J.